W. H. SPARKS et al., Trustees for the General American Oil Company of Texas Retirement Trust, Appellants,

v.

W. Thomas BOLTON and Texas and New Orleans Railroad Company, Appellees.

No. 7321.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 20, 1962.

Rehearing Denied March 20, 1962.

George S. Terry, Jerry N. Jordan, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for appellants.

L. P. Bickel, Jackson, Walker, Winstead, Cantwell & Miller, H. Louis Nichols, Saner, Jack, Sallinger & Nichols, Jerome Chamberlain, Chamberlain & Rachael, Dallas, for appellees.

FANNING, Justice.

Appellants sought a permanent injunction against appellees from erecting an automobile service station on railroad right-of-way in the City of Dallas. The trial court sustained appellees' plea in abatement and dismissed appellants' suit asking to enjoin appellees from platting and subdividing a portion of the railroad's right-of-way and constructing an automobile service station thereon, which was reversed by the Dallas Court of Civil Appeals, 335 S.W.2d 780, and remanded for a trial on the merits. In a trial on the merits on the question of permanent injunction before the court without a jury, the trial court denied the permanent injunction. Appellants appealed to the Dallas Court of Civil Appeals. By an order of the Supreme Court of Texas on equalization of the dockets of the Courts of Civil Appeals the appeal was transferred to this court.

The judgment of the trial court is reversed and judgment is rendered for appellants granting the injunction sought by them.

Appellants as trustees are owners of an interest in land abutting and adjacent to the railroad right-of-way. Appellee Bolton obtained a lease from the Railroad on a portion of the right-of-way at a corner where the right-of-way and Lovers Lane intersect. His intention is to build an automobile service station at the location. To make room for the service station the single railroad track, which now runs down the middle of the 100-feet wide right-of-way, will be moved 35 feet to the east, so that Bolton will have a lot approximately 80 x 200 feet on which to build the station.

On August 8, 1958, appellees filed with the City Plan Commission an application for approval of the subdivision and platting of the one lot. The application was refused by the City Plan Commission.

Thereupon the City Council on September 2, 1958, passed Ordinance No. 7792 providing for temporary zoning of railroad rights-of-way not abandoned for railroad use; providing for temporary platting rules; and providing for the issuance of building permits.

On October 8, 1958, Bolton re-submitted his application for subdivision and platting of the one lot and for a building permit. The City Plan Commission again refused to approve the platting and subdivision, but under the terms of Ordinance No. 7792 had to refer its decision to the City Council for final action.

On December 1, 1958, the City Council rejected the recommendation of the City Plan Commission and approved Bolton's application.

On June 22, 1959, the City Council passed a resolution ordering the City Manager to direct the appropriate department to issue the building permit upon certain conditions. In this resolution the City Council took cognizance of the pendency of this suit and expressly reserved to the parties such outcome of the suit. The Council further imposed the condition that if the court in this suit should hold void the action of the Council on December 1, 1958, then the property in question would be subject to a new ordinance which the Council proposed to pass, which ordinance would require a public hearing and notice to nearby property owners before a service station would be permitted at the site in question.

The Dallas Court of Civil Appeals in its opinion in 335 S.W.2d 780 held that ordinance 7792 was void. We quote from said opinion in part as follows:

"If the factual allegations in appellants' sworn petition are true (and they are not denied in Bolton's unsworn plea in abatement) the ordinances and acts,

of the City Council and the Acts of the Building Inspector in this case are void. Ordinance No. 7792 passed by the City Council on August 8, 1958, is void if by its terms the City Council attempted to take over the platting and subdividing responsibilities of the City Plan Commission. Art. 974a, V.A.C.S.; Hollis v. Parkland Corporation, 120 Tex. 531, 40 S.W.2d 53. * * *

"Appellee says that by issuing the permit the Building Inspector in effect found that appellees complied with the Building Code and Zoning Ordinance of the City of Dallas and that the proposed use of the property is in compliance with said ordinances. We cannot agree to this contention for two reasons: (1) if the permit was issued pursuant to a void ordinance and orders, the purported implied findings of the Building Inspector have no significance whatever; and (2) in the light of the resolution of the City Council of June 22, 1959, the Building Inspector did not make any findings at all—he merely issued the permit because the City Council and City Manager sent down orders for him to do so."

Appellants by their first point contend that the trial court erred in finding as a fact that Article 125–1, Chapter 125 of the Code of Civil and Criminal Ordinances of the City of Dallas, Texas, was enacted for the purpose of preventing trespasses and nuisances on the railroad rights-of-way, and was not designed nor intended to prevent the property in question from being used for service station purposes because there is no evidence to support said finding. By point 4 appellants contend that the trial court erred in concluding as a matter of law that the above referred to ordinance does not prevent the property in question from being used for filling station purposes. By point 5 appellants contend that the trial court erred in concluding as a matter of law that the above referred to ordinance is not applicable to prohibit the use of the property in question. By point 6 appellants contend that the trial court erred in failing to grant an injunction to prohibit the construction of a service station on the railroad right-of-way, which station would sell goods, wares and merchandise in violation of the express terms of the above referred to ordinance.

The above referred to ordinance was adopted by the City of Dallas in 1918 as Ordinance No. 287. In 1929 the Comprehensive Zoning Ordinance of the City of Dallas was enacted, and this ordinance did not have any provision for repealing Ordinance 287. In 1941 the Comprehensive Zoning Ordinance was included in the 1941 Code of Civil and Criminal Ordinances of the City of Dallas as was said Ordinance 287 which became Chapter 125 of the 1941 Code. Said ordinance is found below.[1]

Plaintiffs-appellants plead that the sale of any merchandise of any kind or character (which would include gasoline, tires and automobile accessories) was unlawful

---

1. "Art. 125–1. (1863) Sales on railroad grounds prohibited, exception; penalty.— It shall be unlawful for any person, firm or corporation or association of persons, pursuing the business or occupation of selling fruits, melons or other commodities or merchandise of any kind or character, to use or occupy for the purpose of such business or occupation any part or portion of any railroad depot, depot grounds, yard, right or way, side track or spur track of any railroad company within the corporate limits of the city of Dallas; provided, however, that this chapter shall not apply to persons having or holding by lease or contract any concession, right or privilege to occupy and use any certain part or portion of any passenger railway depot in said city for the purpose of conducting a business therein and of the vending of fruits, melons or other merchandise or commodities. Any person, firm or corporation or association of persons violating any of the terms or provisions of this chapter shall be deemed guilty of a misdemeanor and, upon conviction in the corporate court, shall be fined not more than one hundred dollars, and each day's violation thereof shall constitute a separate and distinct offense. (Ord. 287, Bk. 20, p. 279)."

and would constitute a violation of the above referred to ordinance.

The above referred to ordinance was in full force and effect and was recognized by the trial court as being valid and in existence. However, the trial court found and concluded to the effect that it did not apply to a service station built on railroad rights-of-way. The trial court apparently based its findings and conclusions on the emergency clause (found below) [2] to the original ordinance 287, and upon the trial court's further finding and conclusion that plaintiffs-appellees would sustain no damages by reason of the erection of the filling station, and since the ordinance in question was a penal ordinance plaintiffs-appellees would not be entitled to the injunction sought.

As above stated, the trial court found that the ordinance in question was designed to prevent nuisances and trespasses. Undoubtedly the ordinance does this but it also does more.

The first part of the ordinance in effect says that all sales of merchandise on railroad lands are unlawful. The exception proviso says in effect—except in passenger depots under a lease from the railroad.

■ The operation of an automobile service station on railroad right-of-way is not a railroad use of the land. Gulf Refining Company v. Dishroon, Tex.Civ.App., 13 S.W.2d 230.

■ The above referred ordinance is not ambiguous. It is plain and intelligible on its face, and we have no right to add words to it or take them from it. Mills v. Brown, Tex., 159 Tex. 110, 316 S.W.2d 720. We therefore hold that the erection of an automobile service station on railroad right-of-way in the City of Dallas would be in

violation of said ordinance above referred to.

■ There is no evidence of probative force in the record to sustain the trial court's fact finding complained of by appellants in their first point. Furthermore, the interpretation of the applicability. of the ordinance in question is one of law rather than one of fact, and as we have heretofore held, the ordinance is unambiguous and the erection of an automobile service station on railroad right-of-way in the City of Dallas would be in violation of said ordinance. Appellants' 1st, 4th and 5th points are sustained.

■ Going forward further we are next confronted with the situation that the ordinance in question is a penal ordinance. The fact that the ordinance is a penal ordinance does not prevent the remedy of injunction from being applied where plaintiffs-appellants would be specially damaged by such violations of the law in a way that the public would not. In this connection see Woods v. Kiersky, Tex.Com. App., 14 S.W.2d 825, and Missouri-Kansas & Texas Ry. Co. v. Neuhoff Bros., Tex. Civ.App., 297 S.W.2d 316 wr. ref., N.R.E.

By points 28 and 29 appellants contend that the trial court erred in finding that the plaintiffs would not suffer damage to their property which was located within 20 feet of the site in question if the service station were built on said site because said finding has "no evidence" to support it, and because such finding was "contrary to the great weight and overwhelming preponderance of the evidence."

The trial court heard testimony relative to damages from the witnesses Miller and Sharp. Miller, tendered as a witness by appellants, was a well-qualified land ap-

2. "Section 4. The fact that there now exists no adequate ordinance prohibiting such nuisances and trespasses creates an urgency and emergency for the immediate preservation of the public peace, health and safety requiring that this ordinance take effect at once, and it is accordingly so ordained that this ordinance shall take effect from and after its passage, approval and publication as in the Chapter in such cases made and provided."

praiser with much experience in his field, and properly qualified to testify; he made an appraisal to determine whether or not there would be any damage to the trust's lands abutting the railroad right-of-way if the service station was built on that right-of-way, rather than used as railroad only and he concluded that there would be a $47,000.00 difference in the values (and adverse to the trust's lands).

Sharp, tendered as a witness by appellees, was not an expert witness, was not qualified as one, and no attempt was made to qualify him as an expert witness. All of his testimony with reference to damages was made over pertinent objections and should have been excluded. See 17 Tex. Jur.2d, p. 298. Sharp's testimony can not be considered as any evidence of probative force to support the trial court's finding that there were no damages to appellants.

The only evidence of probative force remaining in the record is the evidence of the qualified expert Miller who testified as to $47,000.00 damages. As we view the record his testimony was clear and cogent, unimpeached and uncontradicted and free from suspicion.

■ The diminution in market value of real estate is the proper measure of damage where permanent injury results to the land. City of Texarkana v. Rhyne, 126 Tex. 77, 86 S.W.2d 215.

■ We are of the opinion that the only evidence of probative force in the record is conclusive that appellants suffered damages and we sustain appellants' 28th point. In any event such finding of "no damages" was so clearly against the great weight and overwhelming preponderance of the evidence as to be manifestly wrong and clearly unjust. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Appellants' 29th point is sustained.

Appellants' 6th point is also sustained.

■ By point 7 appellants contend that the trial court erred in finding as a fact that the property in question has been platted as a building lot under the provisions of Article 974a, Vernon's Ann.Civ.St., because such a finding is a mixed finding of fact and conclusion of law and should have been stricken as a finding of fact. We think appellants' 7th point is well taken and sustain same.

■ By point 8 appellants contend that the trial court erred in finding as a fact that the property in question had been platted as a building lot under the provisions of Article 974a, V.A.C.S., because there is no evidence to sustain same. By point 11 appellants contend that the trial court erred in concluding as a matter of law that the action of the City Council of the City of Dallas, Texas, on December 1, 1958, was not void; appellants in this respect contending that the Council's action was concerned with the approval of a plat, and that the Council had no authority over platting matters, and that such action was void.

The area in question had never been platted as a building lot under the provisions of Article 974a for the reason that the City Council of Dallas, Texas, took control of the platting under the guise of the invalid ordinance No. 7792 and approved the plat and deprived the City Plan Commission of Dallas, Texas of any final authority in said case, and any platting that was done was under the invalid ordinance No. 7792 and not under Art. 974a, V.A.C.S.

The Dallas Court of Civil Appeals in its opinion heretofore referred to (335 S.W.2d 780) with reference to the phase of this case then before it held that ordinance 7792 was void if by its terms the City Council attempted to take over the platting and subdividing responsibilities of the City Planning Commission. The trial court also found that ordinance 7792 was void. The Dallas Court of Civil Appeals also stated in said opinion above referred to that if the building permit was issued pursuant to a void ordinance and orders that the purported findings of the Building Inspector would have no significance whatsoever, and

that in light of the resolution of the City Council of June 22, 1959, the Building Inspector did not make any findings at all but merely issued the permit because the City Council and City Manager sent down orders for him to do so.

The City Council on December 1, 1958, when it approved the plat submitted, attached certain conditions to it and in fact directed that certain details be worked out with the City Plan Engineer. The plat was not one approved by the City Planning Commission, but was one taken out of the hands of the City Planning Commission by the City Council by reason of invalid ordinance No. 7792. Appellants' points 8 and 11 are sustained. Since the property in question was not validly platted as a building site under Article 974a, V.A.C.S., no service station may now be erected thereon and the construction of such service station should be enjoined.

By point 12 appellants contend that the trial court erred in finding as a fact that the property in question was zoned C-1 commercial under the Comprehensive Zoning Ordinance of the City of Dallas because such finding has no evidence to support it. By point 15 appellants contend that the trial court erred in finding as a fact that the construction of the filling station was a use of land authorized under the ordinances of the City of Dallas, Texas, because there was no evidence to support it, and by point 18 appellants contend that the trial court erred in the fact finding referred to in point 15 because same was a conclusion of law rather than of fact and should be stricken as a finding of fact. By points 19, 20 and 21 appellants attack the conclusion of law of the trial court that the property in question was zoned C-1 commercial under the zoning ordinances of the City of Dallas because (1) railroad rights-of-way were not covered by the original comprehensive zoning ordinance of the City of Dallas, Texas (2) because the shifting of railroad tracks on railroad rights-of-way created new areas for proposed building sites and created conditions which called for the independent exercise of the City's powers to meet new conditions, and because (3) among other things, the construction by the City Council of Dallas, Texas, of the Comprehensive Zoning Ordinance to the effect that said ordinance did not apply to railroad rights-of-way, is an interpretation binding upon the court. By points 22, 23, 24 and 25, appellants attack the finding of fact and conclusion of law of the trial court that ordinance No. 8143 of the City of Dallas was not a valid ordinance, and that the trial court erred in refusing to admit said ordinance in evidence.

Said ordinance No. 8143, among other things, provides for the temporary or emergency zoning of railroad rights-of-way. On June 22, 1959, the City Council passed on first reading an ordinance dealing with this subject; an attorney of record of appellee Railroad Company appeared in opposition to such ordinance and a public hearing was called for July 6, 1959; on July 6, 1959, a public hearing was held on the proposed ordinance concerning the same matter, and appellee Railroad Company's attorney of record also again appeared in opposition and a new ordinance dealing with essentially the same matter was submitted on said date and substituted for the previous ordinance passed on the first reading on June 22, 1959. On July 20, 1959, there was another hearing before the City Council, wherein appellee Railroad Company's attorney of record also appeared in opposition. After hearing and discussion said ordinance 8143 was passed and enacted by the City Council, with the ordinance bearing an emergency clause. The ordinance is too lengthy to quote in full here, but may be found in the record. The caption to ordinance No. 8143 is quoted below.[3]

3. "An Ordinance providing for temporary or emergency zoning of private utility, street railway, interurban railway and railroad right of ways abandoned, in whole or in part, or building sites created by the shifting of utility installations, street rail-

After carefully examining the entire record in this case it is our view that under the basic comprehensive zoning ordinances of the City of Dallas, Texas, it was not contemplated that railroad rights-of-way would be utilized for any purposes other than railroad purposes only. See Gulf C. and S. F. Ry. Co. v. White, Tex.Civ.App., 281 S.W.2d 441.

Ordinance 8143 undoubtedly had for its purpose the setting up of a means or system whereby railroad rights-of-way could be utilized for non-railroad purposes and was clearly enacted as a temporary or emergency zoning ordinance. We hold it is valid as a temporary or emergency zoning ordinance. In this connection see City of Dallas v. Meserole, Tex.Civ.App., 155 S.W.2d 1019, wr. ref., w. m.

Sec. 3 of Ordinance 8143 provides in essence that where the shifting of facilities in a right-of-way is undertaken for the purpose of creating a building site, and the right-of-way is contiguous to or abuts another street or right-of-way across which there is a more restricted zoning that the zoning adjacent to the right-of-way so altered or abandoned, the building site would have a restricted zoning classification of the more restricted zoning classification of land across the said easement or right-of-way. Ordinance 8143 as applied to the fact situation at bar would give a temporary zoning classification of R–7.5, and an automobile service station is not an authorized construction to be made under an R–7.5 classification under the zoning ordinances of the City of Dallas, Texas.

Appellants' 12th and 15th points are sustained. Appellants' points 18 through 25 incl., are also sustained.

The judgment of the trial court is reversed and judgment is rendered that the injunction sought by appellants be issued.

Reversed and rendered.

way tracks, interurban tracks and railroad tracks within such right of ways within the City limits of Dallas as they now exist or as the same may hereafter be enlarged; providing for temporary platting rules and regulations which shall be in effect during the interim period until permanent platting and zoning regulations shall be promulgated as provided by the statutes; providing for a method of procedure for the issuance of building permits; providing for the character of permit that may be issued; providing for a savings clause; providing for the repeal of Ordinance No. 7792 enacted by the City Council on September 29, 1958; providing for a penalty; and declaring an emergency."