W. Thomas BOLTON and Texas & New Orleans Railroad Company, Petitioners,

v.

W. H. SPARKS et al., Trustees for the General American Oil Company of Texas Retirement Trust, Respondents.

No. A–8989.

Supreme Court of Texas.

Nov. 21, 1962.

Rehearing Denied Dec. 19, 1962.

Saner, Jack, Sallinger & Nichols, Jerome Chamberlain, Dallas, for W. Thomas Bolton.

L. P. Bickel, of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for Texas & New Orleans R. Co.

Jerry N. Jordan, of Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for respondents.

SMITH, Justice.

This suit was brought by W. H. Sparks et al. as trustees for the General American

Oil Company Retirement Trust, the owners of property adjoining the right-of-way of the Texas and New Orleans Railroad Company, to enjoin the Railroad and W. T. Bolton from constructing an automobile service station on the Railroad's property. In a trial before the court without a jury, the injunction was denied; on appeal, the Texarkana Court of Civil Appeals reversed and rendered granting the injunction. Sparks v. Bolton, Tex.Civ.App. (1962), 355 S.W.2d 199. For convenience the parties will hereafter be referred to as Sparks, Trust, Bolton, and the Railroad; emphasis will be ours unless otherwise indicated.

The Railroad's right-of-way runs north and south and crosses Lovers Lane, in Dallas, Texas, some 95 feet east of the intersection of Lovers Lane and Central Expressway. Bolton has leased a portion of the railroad right-of-way at the point the right-of-way crosses Lovers Lane, and proposes to construct a filling station thereon. To make room for the station it is contemplated that the single track, now located in the middle of the right-of-way, will be moved 35 feet to the east which will give Bolton a lot fronting 80 feet on Lovers Lane and extending to a depth of 200 feet along the west side of the shifted right-of-way. To the east, and adjacent to the right-of-way, is the property owned by the Trust upon which is located a service station.

In 1917, the first *penal* ordinance dealing with the zoning of railroad rights-of-way, Chapter 125 of the ordinances of the City of Dallas, was enacted. Section 1 of Chapter 125, referred to as Ordinance 287 provided:

"Sec. 1. That from and after the final passage of this ordinance it shall be unlawful for any person, firm, corporation or association of persons, pursuing the business or occupation of selling fruits, melons, or other commodities, or merchandise of any kind or character, to use or occupy for the purpose of such business or occupation, any part or portion of any railway de-

pot, depot grounds or yards or right-of-way or sidetrack or spur tracks of any railway company within the corporate limits of the City of Dallas; providing, however, this ordinance shall not apply to persons having or holding by lease or contract any concession, right or privilege to occupy and use any certain part or portion of any passenger railway depot in said city for the purpose of conducting a business therein and of vending of fruit, melons or other merchandise or commodities."

Section 4 of the original ordinance states:

"Sec. 4. The fact that there now exists no adequate ordinance prohibiting such nuisances and trespasses creates an urgency and an emergency for the immediate preservation of the public peace, health and safety requiring that this ordinance take effect at once, and it is accordingly so ordained that this ordinance shall take effect from and after its passage, approval and publication as authority in such cases is made and provided."

In 1929, the City of Dallas adopted a Comprehensive Zoning Ordinance which zoned the entire city into districts, and regulated the use of property in such districts. In 1941, the Comprehensive Zoning Ordinance was included in the 1941 Code of Civil and Criminal Ordinances of the City of Dallas as was Ordinance 287 which became Chapter 125.

In August of 1958, Bolton and the Railroad submitted a preliminary plat to the City Planning Commission to secure approval of the subdivision and platting of the right-of-way. On September 4, 1958, the plan was disapproved. On September 29, 1958, the City Council passed Ordinance No. 7792 which attempted to vest in the City Council the power to pass on proposed platting of railroad rights-of-way which had not been abandoned for railroad use.

In October of 1958, Bolton re-submitted his application for a building permit, and

a request for approval of the proposed subdivision to the City Planning Commission which again did not give approval; however, under the provisions of Ordinance No. 7792, the application, along with a recommendation that the platting of the subdivision be disapproved, was referred to the City Council. Disregarding the recommendation, the City Council approved the application subject to certain revisions being made, and directed that the details be worked out with the City Planning Engineer. On May 11, 1959, the final platting of the subdivision of the right-of-way was filed with the City Planning Commission, and on June 22, 1959, the issuance of the building permit was authorized by the City Council.[1]

■ Sparks asserts and the Court of Civil Appeals agreed that since the City Council took control of the approval of platting under the guise of the invalid ordinance No. 7792, the area in question has never been platted as a building lot under the provisions of Article 974a, § 3[2] of Vernon's Annotated Civil Statutes. Sparks

contends that since there has been no platting, no utilities can be connected to the building under the provisions of Article 974a, § 8[3] of Vernon's Annotated Civil Statutes, and that the construction of such service station was properly enjoined on this basis.

The evidence establishes that the final plat was filed in the City Plan Office on May 11, 1959, and that no action was taken thereon within 30 days. This fact is certified to by the Chairman of the City Planning Commission. It is Bolton's contention that under such facts the plat is approved as a matter of law. We agree with Bolton, the Statute so provides. See Article 974a, § 3, supra.

At the Council meeting on June 22, 1959, Ordinance 59–2858, which provided for the temporary or emergency zoning of railroad rights-of-way and the repeal of Ordinance No. 7792, was proposed. This began a series of steps leading to the enactment of Ordinance No. 8143 which, if valid, would result in the site in question being zoned for residential use.[4] Auto-

1. In 1960, the Dallas Court of Civil Appeals held Ordinance No. 7792 and the actions taken thereunder to be invalid since the City Council attempted to take over the platting and subdivision responsibilities of the City Planning Commission; and no notice was given to property owners within 200 feet of the properties affected by the ordinance. W. H. Sparks v. W. T. Bolton, Tex.Civ.App., (1960), 335 S.W.2d 780, no wr. hist.

2. "Sec. 3. That it shall be unlawful for the County Clerk of any county in which such land lies to receive or record any such plan, plat or replat, unless and until the same shall have been approved by the City Planning Commission * * *. *Any person desiring to have* a plan, plat or *replat approved as herein provided, shall apply therefor to and file a copy with the Commission* * * * herein authorized to approve same, *which shall act upon same within thirty days* from the filing date. *If said plat be not disapproved within thirty days from said filing date, it shall be deemed to have been approved and a certificate showing said filing date and the fail-*

*ure to take action thereon within thirty days from said filing date, shall on demand be issued by the City Planning Commission* * * * *of such city, and said certificate shall be sufficient in lieu of the written endorsement or other evidence of approval herein required.*"

3. "Sec. 8. Unless and until any such plan, plat or replat shall have been first approved in the manner and by the authorities provided for in this Act, it shall be unlawful within the area covered by said plan, plat or replat for any city * * *, or any officials of such city, to serve or connect said land, or any part thereof, * * * with any public utilities * * *."

4. Ordinance No. 8143 § 3, provides that where the shifting of the facilities in the right-of-way is undertaken for the purpose of creating a building site and the right-of-way is contiguous to or abuts another street or right-of-way across which there is a more restricted zoning than the zoning adjacent to the right-of-way so altered or abandoned, the building site has a temporary zoning classifica-

mobile service stations are not authorized in such areas.

The next Council meeting was held on July 6, 1959; at that meeting a new Ordinance, No. 59–3102, was proposed as a substitute for Ordinance No. 59–2858. Thereafter, suggestions and changes were made in Ordinance No. 59–3102, and at a public hearing on July 20, 1959, Ordinance No. 8143 was presented. The rules were suspended, and Ordinance No. 8143 passed that same date; it repealed Ordinance 7792, superseded Ordinance No. 59–3102, and sought to amend existing classifications under the Comprehensive Zoning Ordinance.[5]

The City Council has the power to provide for the manner in which regulations and zoning districts shall be determined, established and enforced, amended or changed. However, no action of the City Council in this regard shall become effective until after a public hearing held after 15 days published notice. Article 1011d, Vernon's Annotated Civil Statutes; the provisions relative to notice and hearing expressly apply to all changes or amendments or ordinances, Article 1011e, Vernon's Annotated Civil Statutes. The City Council may avail itself of the powers conferred by the statute only after receiving recommendations from the City Planning Commission, and the sending of 10 days written notice of all public hearings on proposed changes in classification to all owners of property affected by the proposals, and to all owners of property located within 200 feet of any property affected thereby. Article 1011f, Vernon's Annotated Civil Statutes, see 1961 amendment.

The evidence establishes that these statutory requirements were not met in the passage of Ordinance No. 8143. For example, public hearings were held at 14-day intervals; June 22, 1959; July 6, 1959; and July 20, 1959. Further, Sparks admits that no notice of the proposed ordinance and amendments was given in compliance with Articles 1011d and 1011f. The trial court held that Ordinance 8143 is invalid and could not be admitted in evidence; the Court of Civil Appeals disagreed.

Sparks contends that under the Comprehensive Zoning Ordinance it was not contemplated that railroad rights-of-way should be zoned, and that the enactment of Ordinance No. 8143 was not such a "change of classification" as to require that written notice be given in accordance with the provisions of Article 1011f. Sparks further asserts that ordinances enacted on an emergency or temporary basis need not comply with the provisions of Articles 1011d, 1011e and 1011f. We reject these contentions.

Chapter 165, § 2 of the Comprehensive Zoning Ordinance divides the city into use districts, and provides that the boundaries of these districts are to be shown on a Zoning Map which is expressly made a

tion of the land across the said easement or right-of-way. Across the Central Expressway is residential zoning.

5. The Preamble of Ordinance No. 8143 stated: "Whereas, *in the enactment of the original General Comprehensive Zoning Ordinance of* the City of Dallas, and the revisions thereof, * * * *it was never contemplated that the right-of ways of * * * railroads, * * * when* abandoned in whole or in part * * * that the building sites created thereby *would be free from zoning control and regulations* * * *.

      *       *       *       *       *

"Whereas, it further appears that under the present Zoning Ordinance, many railroad and utility right-of-ways traverse residential areas and in consonance with said ordinance, these right-of-ways were and are zoned for residential purposes in order to make the railroad and utility uses conforming; and *in other locations where property has lower classifications,* the utility, street railways, interurban railway and *railroad right-of-ways bear the same zoning as that of the adjacent or abutting properties,* and in order to provide standard procedure, the Council is of the opinion that this ordinance should be enacted; * * *."

part of the ordinance.[6] Railroad rights-of way are approved for every district created. See: Comprehensive Zoning Ordinance, Art. 165–3; § 7; Articles 165–4, § 1 through Article 165–8, § 1. This is no indication that railroad rights-of-way are not zoned; but rather indicates that the rights-of-way assume the zoning classification of the various districts through which they run. That this is so, is clearly indicated in the preamble of Ordinance No. 8143.[7]

The Zoning Map indicates that the property in question is within an area zoned C–1 (Commercial), and under the provisions of the ordinance, a filling station is an authorized use in Commercial areas.[8] It is our conclusion that at the time of the enactment of Ordinance No. 8143, the railroad right-of-way, at the point in question, was zoned for commercial use under the provision of the Comprehensive Zoning Ordinance; and that Ordinance No. 8143 purports to amend the existing classification of railroad rights-of-way.

The courts of this State have held ordinances and amendments to ordinances invalid where the express, mandatory provisions of our zoning statute have not been complied with. The steps directed to be taken for notice and hearing, when provided for in the law, are intended for the protection of the property owner, and are his safeguards against the exercise of arbitrary power. Each act required is essential to the exercise of jurisdiction by the City Council, and each must be rigidly performed. Peters v. Gough, Tex.Civ.App. (1935), 86 S.W.2d 515, no writ hist.; Tonray v. City of Lubbock, Tex.Civ.App. (1951), 242 S.W.2d 816, writ ref., n. r. e.

See also: Flewellen v. Proetzel, 80 Tex. 191, 15 S.W. 1043. Municipal ordinances must conform to the limitations imposed by the superior statutes, and only where the ordinance is consistent with them, and each of them, will it be enforced. See: Sutherland: Statutory Construction, 3rd Ed., Vol. 2, § 3905. Likewise, full compliance with the statute is necessary to the validity of amendatory, temporary or emergency zoning ordinances. Sparks v. Bolton, Tex.Civ. App. (1960), 335 S.W.2d 780, no writ hist. Ordinance 8143 is invalid, and was properly excluded from evidence.

It is asserted that though the Zoning Map may indicate that the site in question is zoned for commercial uses, the provisions of Ordinance 287, supra, act to preclude all non-railroad uses of this property. The trial court concluded that Ordinance 287 was a valid and existing ordinance, but was designed only to prevent trespasses and nuisances on railroad property, and that it did not apply to prevent the operation of a service station on the Railroad's right-of-way. The trial court also found that the Trust's property would not be damaged by the construction of the filling station in question. The Court of Civil Appeals held that the Railroad's right-of-way could only be used for railroad purposes, and reversed and rendered granting the injunction sought after holding that the testimony of the Trust's expert, Miller, was the only evidence of probative force in regard to the issue of damages.

Miller assumed that the right-of-way could only be used for railroad purposes, and testified that the Trust's property would suffer a diminution in market value of $47,-

---

6. "All notations, references and other information shown on such zoning map shall be as much a part of this chapter as if the matters and information set forth by said map were all fully described herein." Comprehensive Zoning Statute ch. 165, § 2.

7. For the City Council's construction of the Comprehensive Zoning Ordinance, see footnote 3, supra.

8. Article 165–17 of the Comprehensive Zoning Ordinance of 1929 lists uses permitted in commercial districts which includes any uses permitted in a LR–3 area. Art. 165–16 lists uses permitted in LR–3 areas which includes all uses permitted in LR–2 areas. Art. 165–15 lists the uses permitted in LR–2 areas which specifically includes gasoline filling stations.

000 if the proposed station was carried to completion. This estimate of diminution in market value is the difference in the value of the property with "effective expressway frontage," and without such frontage.[9] He further testified that if the site in question could be used for commercial purposes there would be no diminution in the market value of the Trust's property.

Ordinance 287, supra, is penal in nature, and it is well settled that a private individual cannot maintain a suit to enjoin the alleged violation of a penal ordinance, unless the activity complained of results in damages to such person, peculiar to him, and not common to the public in general. See Woods v. Kiersky, Comm. of App. (1929), 14 S.W.2d 825. Thus, the issue of damage is of primary importance if Ordinance 287 is applicable to this case.

Where the construction of municipal ordinances is involved, the primary duty of this court is to carry out the intentions of the municipal legislative body. The legislative intent behind the enactment of Ordinance No. 287 is stated, expressly and by implication, to be to prevent trespasses and nuisances caused by unauthorized vendors of merchandise on railroad property. The Court of Civil Appeals held that the ordinance does more than this. Here, the Court committed error, for it abandoned the well-settled rule that penal ordinances are to be strictly construed. See Rhyne: Municipal Law § 9–12, p. 242. When such a construction is given to § 4 of Ordinance No. 287, supra, and that construction is related to the consideration of the applicability of § 1 to the case at bar, then clearly § 1 does not preclude the activity in question.

Ordinance 287 was passed to protect the Railroad, not adjoining land owners, from trespasses and nuisances. It was never con-

templated that Ordinance 287 would act to preclude lawful business operations conducted on a portion of the railroad's property, leased for that purpose, when that use was not otherwise precluded by law.

It is conceded that if a filling station is a proper use on this property the Trust cannot complain. Thus, we need go no further; the injunction was properly denied by the trial court. Therefore, the judgment of the Court of Civil Appeals is reversed, and the judgment is here rendered that the injunction be dissolved, and that Sparks et al. take nothing.

GREENHILL, Justice (dissenting).

I disagree with the majority opinion as to Ordinance 287 (Section 1 of Chapter 125) of the City of Dallas. In my opinion, the ordinance is applicable. It prohibits the sale of all merchandise which would include gasoline, oil, and other products sold at a filling station.

It is necessary, however, in a case such as this, for Respondents to prove special damage. The trial court found that Respondents would not suffer any special damage. On appeal to the Court of Civil Appeals, Respondents had points of error that (1) there was no evidence to support this finding, and (2) that the finding was against the great weight and preponderance of the evidence. The Court of Civil Appeals sustained both of these points. 355 S.W.2d at 204.

The opinion of the expert witness Miller that there was special damage is relevant, but his testimony was not binding on the trial court. So Respondents did not conclusively prove that they did suffer special damage. It was, however, within the province of the Court of Civil Appeals to hold that finding of the trial court

---

9. Though the Trust's property is separated from Central Expressway by the right-of-way, Miller testified that the public would consider it to have the same value as though it actually fronted on the Expressway. If the station is constructed, the "effective expressway frontage" will be lost. The difference in value of property, in the same general area, without such frontage led Miller to conclude that the Trust's property would suffer $47,000 diminution in market value.

**952**

was against the great weight and preponderance of the evidence. This being a court of law only, we will not review a holding by the Court of Civil Appeals that a verdict is or is not against the great weight and preponderance of the evidence, the holding being considered to be one of fact. Gulf, Colorado & Santa Fe Railway Co. v. Deen (1958), 158 Tex. 466, 312 S.W.2d 933 at 938.

A holding of "against the great weight and preponderance" calls for a reversal and remand of the cause. Accordingly, I would affirm the judgment of the Court of Civil Appeals in so far as it reverses this cause and would remand the case to the trial court for a new trial.

CALVERT, C. J., and WALKER and NORVELL, JJ., join in this dissent.