Mrs. Ruby WALTON, a Feme Sole,
Petitioner,

v.

The CITY OF HOUSTON, Texas,
Respondent.

No. B–56.

Supreme Court of Texas.

Nov. 8, 1967.

Rehearing Denied Jan. 17, 1968.

Patterson, McDaniel, Moore & Browder, Bennett B. Patterson and Thomas C. Primm, Houston, for appellant.

William A. Olson, City Atty., Homer T. Bouldin, Trial Supervisor, Houston, for respondent.

NORVELL, Justice.

The petitioner, Mrs. Ruby Walton, brought this suit to set aside certain paving assessments levied against her property under an ordinance adopted by the City Council of the City of Houston on January 27, 1965, which purported to levy paving assessments against petitioner-plaintiff's property abutting the Monroe Road Extension connecting the Gulf Freeway with State Highway No. 3. The trial court denied all relief sought by Mrs. Walton and decreed that she take nothing against the respondent-defendant city. The Court of Civil Appeals affirmed. 409 S.W.2d 917. We reverse the judgments of the courts below and here render judgment in favor of Mrs. Walton and decree that the paving assessments levied against her property are invalid because of non-compliance with the mandatory requirements of Article 1105b, Vernon's Ann.Tex.Civ.Stats.

The State of Texas and the City of Houston jointly undertook certain road and highway improvements in connection with Monroe Road (a city street) and Winkler Drive (State Highway No. 3). These improvements were made by the Century Construction Company under a contract with the State Highway Department and part of the costs allocated to the City of Houston under an agreement between the city and the highway department. Mrs. Walton owned property abutting on both the Monroe Road Extension and Winkler Drive, but only her Monroe Road property is involved here. It seems that after the Monroe Road Extension had been completed, it was also incorporated into the state highway system. The city proposed and intended that a part of the city's share in the costs of the project would be eventually paid by the proceeds of the sale of assessment certificates issued against property abutting said Monroe Road Extension. As we see it, the controlling in-

quiry is not whether the State Highway Department made a good or favorable contract from the standpoint of the state and city, or whether the City Council acted in good faith in making the contract. The case turns upon the issue of whether or not the statutory procedures were followed by the city in its attempt to affix a valid assessment and lien against Mrs. Walton and her property. It is conceded that Article 1105b, Vernon's Ann.Tex.Stats., and Article IV(b) of the Houston .City Charter (which in effect adopts the provisions of Article 1105b), provide the only legal method whereby a portion of the costs of paving a thoroughfare may be assessed against property abutting such roadway.

Article 1105b, §§ 3 and 4, provides:

"Sec. 3. That the governing body of any city shall have power to determine the necessity for, and to order, the improvement of any highway, highways, or parts thereof within such city, and to contract for the construction of such improvements in the name of the city, and to provide for the payment of the cost of such improvements by the city, partly by the city and partly by assessments as hereinafter provided.

"Sec. 4. That the cost of such improvements may be wholly paid by the city, or partly by the city and partly by property abutting upon the highway or portion thereof ordered to be improved, and the owners of such property, *but if any part of the cost is to be paid by such abutting property and the owners, then before any such improvements are actually constructed,* and before any hearing herein provided for is held, *the governing body shall prepare,* or cause to be prepared, *an estimate of the cost of such improvements,* and in no event shall more than all the cost of constructing, reconstructing, repairing and realigning curbs, gutters and sidewalks, and nine-tenths of the remaining cost of such improvements as shown on such estimate be assessed

against such abutting property and owners thereof." (Emphasis supplied.)

On December 5, 1962, the Houston City Council adopted an ordinance providing that such city and the State of Texas would jointly construct the road improvements above referred to. This ordinance contained the following paragraph:

"The City will contract with the State Highway Department for the construction of such improvements in the name of the City and will, in the first instance, pay to the State Highway Department, out of the available funds appropriated for the purpose, the entire amount becoming due under the terms of said contract."

On December 12, 1962, the city and the State Highway Department entered into the agreement contemplated by the ordinance of December 5th. It provided that the proposed work should be contracted by the state and that the city would transmit to the state with the return of the agreement a city warrant payable to the State Treasurer for $166,700.00 "to be used in paying for the proposed work required by the City in the City of Houston."

On February 5, 1964, the governing body of the city by ordinance approved and accepted the work on the Monroe Road Extension as completed under the contract with the state, which contract had been authorized by the ordinance of December 5, 1962.

On June 10, 1964, some four months after the work on the Monroe Road Extension had been accepted by the city, the governing body of Houston by ordinance approved estimates of the cost of permanent improvements constructed as a part of the Monroe Road Extension project and ordered "that a hearing be held and (notice) given to all owning or claiming any abutting property or any interest therein" as to the assessments which the city intended to levy against their property. July 1, 1964 was the date set for such hearing.

On January 27, 1965, the Houston City Council adopted an ordinance closing the hearing ordered by it on June 10, 1964 and assessed various amounts against abutting property owners, purportedly acting under and by virtue of Article 1105b, Vernon's Ann.Tex.Stats., and Article IV(b) of the charter of the City of Houston. Mrs. Walton's assessments on lands owned by her and abutting upon Monroe Road aggregated the principal sum of $16,106.96.

Under the scheme adopted by the city, the State Highway Department, for a stipulated price, was to construct street improvements for the city. In payment for such work and upon execution of a contract with the highway department, the city paid to the State of Texas the sum of $166,700.00, represented by vouchers drawn against its Storm Sewer Bond Fund and Street Improvement Bond Fund. It was after the city had paid the state its share of the costs of the street and highway improvements and long after the construction work had been completed, that the City Council "prepared or caused to be prepared an estimate of the cost of such improvements" and set a date for a hearing with reference thereto as provided for in Article 1105b, § 9.[1] The ordinance of June 10, 1964 approves an estimate prepared by the Director of the Department of Public Works and Engineering, dated May 6, 1964, and the notice of hearing refers to this estimate.

From the above statement of the actions taken in regard to the levying of assessments against Mrs. Walton's property, it is apparent that the mandatory provisions of Article 1105b, § 4, were not complied with. The statute prescribes that *"before* any such improvements are actually constructed * * the governing body (of the city) shall prepare, or cause to be prepared, an estimate of the cost of such improvements * * *"

The estimates approved by the City Council and upon which the hearing under Article 1105b, § 9, was held were prepared after the completion of the work upon the Monroe Road Extension.

It may be that the method followed by the City of Houston in constructing the improvement upon the extension was a convenient, reasonable and expeditious procedure for securing such improvements, but the fact remains that the plan followed by the city was not in accordance with the applicable statute and charter provision which must be followed in order to fix a valid assessment.

In Breath v. City of Galveston, 92 Tex. 454, 49 S.W. 575 (1899), this Court said:

> "In this character of proceeding, the purpose is to impose upon the owner and his property, without his actual participation or consent a pecuniary obligation and lien. In other words, when certain steps prescribed by the charter have been taken, the law imposes the obligation and lien. Therefore, each step is an essential element of this imposed obligation and lien, and the absence of any one is as fatal as is the absence of any of the essential elements of an ordinary contract in a suit upon a private agreement. * * *"

See also, Flewellin v. Proetzel, 80 Tex. 191, 15 S.W. 1043 (1891), Bolton v. Sparks, 362 S.W.2d 946, l. c. 950 (Tex.Sup.1962).

Glenn v. City of Arlington, 365 S.W.2d 197 (Tex.Civ.App.1963, writ ref'd n. r. e.), is not in point here. It appears from the opinion of the Court of Civil Appeals that the regularity of the procedure by which the assessments were levied under Article 1105b was not passed upon by the court.[2]

---

1. In connection with Article 1105b, § 9, see, City of Houston v. Fore, 412 S.W.2d 35 (Tex.Sup.1967).

2. A stipulation in the Glenn case contains the following paragraphs:

> "1. The only question raised by the appeal is the jurisdiction of the governing body of the City of Arlington to assess abutting property and its owners for any part of the cost of improving U.S. Highway 80 because such

The judgments of the courts below are reversed and judgment here rendered for petitioner.

highway was improved in part with Federal aid."

"3. The procedure followed by the governing body of the City of Arlington in assessing abutting property and its

owners at the rate of $1.58 per front foot of property abutting U.S. Highway 80 conformed in all respects to the procedure prescribed by article .1105B V.A.T.C.S."