J. D. ABRAMS, INC., et al., Appellants,

v.

Fred G. SEBASTIAN, et al., Appellees.

No. 6758.

Court of Civil Appeals of Texas, El Paso.

July 12, 1978.

Rehearing Denied Aug. 9, 1978.

Johnson & Bowen, Phillip C. Bowen, Alan C. Nasits, El Paso, for appellants.

Collins, Langford & Pine, John A. Langford, William Pate, El Paso, for appellees.

## OPINION

WARD, Justice.

This is an appeal from the granting of a temporary injunction which prohibited property owners, a contractor, and City Officials of El Paso from further proceeding under the terms of a grading permit issued by the City of El Paso. We affirm.

The City of El Paso adopted a Grading Ordinance as a complement to its General Zoning and Land Use Ordinances. The stated purposes of the Grading Ordinance were to assure that proposed grading in the City, and particularly in the mountainous area, would result in the minimum disturbance of the terrain so as not to create flood problems or irreparable scars on the natural land features.

The Ordinance prohibited any grading within the City without a permit, excepting therefrom certain small activities. Any person desiring a permit was required to apply to the City Engineer, the application describing the name of the owner, the property, the contractor, the location, the nature and extent of the proposed work, whether or not the work was to prepare the site for a subdivision, the amount of material to be excavated, and the future intended use of the site. It specifically provided that changes in the intended use of the land involved after a permit was applied for would require reapplication for a permit. When grading was to be performed on a site intended to be subdivided, no grading permit would be issued until the preliminary subdivision plat had been approved by the City Plan Commission. When the site

was intended to be subdivided, the application was to be referred to the Department of Planning and Research for study and comment, which in turn would report its comments to the City Engineer. When the grading was to be performed on any site in the mountain development area, the Secretary of the City Plan Commission was required to schedule a public hearing before the Plan Commission not less than fifteen days after the receipt of the referral from the City Engineer, and at least ten days' notice of the time and place of such hearing was required to be published in the official newspaper in the City. After the public hearing, the Plan Commission was then required to make findings of fact concerning whether the proposed work might reasonably be expected to have an adverse effect on the City's comprehensive zoning and land use plan, on any adjacent property, and on the visual appearance of the mountain development area, and, based upon such findings, the Plan Commission would either approve, modify, or disapprove the grading permit application and the development plan. If it approved the plan, it would then authorize the City Engineer to issue the grading permit.

In any case where the grading was to be performed on sites in the mountain development area, the City Council was granted the authority to hear and determine appeals from any decision of the Plan Commission. In this connection, the Ordinance provided that any person aggrieved by such decision of the Plan Commission, or any taxpayer, might appeal to the City Council, said appeal to be filed with the City Clerk in writing within fifteen days from the date of the decision appealed from. The City Clerk would then schedule a public hearing before the City Council, and at least ten days' notice of this hearing was to be published in the official newspaper. Thereafter, the City Council was to act, and, if it authorized the issuance of the permit, the City Engineer was then allowed to issue the permit.

In addition, the Ordinance provided that on permits within the mountain development area, no permit would issue until the permit had been authorized by the Plan Commission and, in the event of an appeal to the City Council, issuance of the permit would be stayed and the permit not issued by the City Engineer unless authorized by the decision of the City Council.

The mountain development area, above mentioned, was described in the Ordinance and contained all of the mountainous area which is located within the City of El Paso.

On November 18, 1977, an application for a grading permit covering property at 7041 Alabama Street, El Paso, was filed by the owners, J. D. Abrams, Trustee, and R. A. Knapp. The property contained 55 acres and lay within the mountain development area. The reason stated in the application and in the document accompanying it was use as a borrow pit for the removal from the site of approximately 1,800,000 cubic yards of material, which would be used as borrow material in the construction of the North-South freeway in El Paso. It was also noted that the future use of the site would be for "Residential and Tennis Club." The existing zoning for the property was for Residence R-2 and R-3, and, as later indicated by the City Engineer and the City Director of the Department of Planning, Research and Development, the use for a borrow pit would require a rezoning to M-1 zoning. Regardless of the provisions in the Ordinance, the City Engineer issued a "temporary permit to grade" to the applicants on the same day that the application was made.

Acting upon the application, the Secretary scheduled a public hearing before the City Plan Commission for December 13, 1977, and caused the notice of hearing to be published in the newspaper on December 7, 1977. This notice was thus published less than the ten days as required by the Ordinance. At the City Plan Commission hearing on December 13th, the City Engineer and the Director of the Department of Planning, Research and Development recommended that the Commission not consider the request until a proper development and subdivision plan was submitted in

accordance with the mountain Grading Ordinance; that any development and subdivision plan that would be submitted must show conformity with R–2 and R–3 zoning; and that if the purpose of the permit continued to be for a borrow pit, which would require a change to M–1 zoning, then it was recommended that such a change in zoning not be granted for the area. The City Plan Commission continued its hearing and reconvened on December 20th without any further notice being given of the meeting, although some phone calls were made by the City Plan Department, presumably to interested citizens in the neighborhood. At the meeting on December 20, 1977, the application was approved and the permit was granted. An appeal was then taken by certain citizens to the City Council, and the City Council did, on January 19, 1978, by motion approve the application and authorized the permit to be issued.

Thereafter, the present suit was instituted, and after hearing, the trial Court did, on February 17th, find that the permit was of no effect, and, based upon lack of public notice of the December 20, 1977 meeting of the El Paso City Plan Commission and upon the fact that the property owner's permit application was incomplete and not in accordance with the specific requirements of the mountain Grading Ordinance, did determine that the permit should not have been issued by the City Council. Thereupon, a temporary injunction was issued against the Defendants enjoining and restraining them from further proceeding under the grading permit issued on January 19th; and ordering that no grading, loading or removal of earth material from 7041 Alabama would be permitted until further order of the Court. The Defendants, having been permitted to supersede the order, perfected the present appeal.

■ The first point presented by the Defendants is that the temporary injunction was erroneously issued as no request for a temporary injunction was made in the Plaintiffs' pleadings. The Plaintiffs' prayer was only to the effect that "the Court issue an Order to Show Cause why the requested injunction should not be issued * * *." Acting on the show cause request, the trial Court issued an order setting a hearing for February 6, 1978, ordering the Defendants to appear and "to show cause why the action of the City Council of January 19, 1978, should not be set aside and why a temporary injunction should not issue enjoining the Defendants from proceeding and from doing any work under the permit issued on January 19, 1978." The hearing was then held on February 6th, the parties announced ready for trial, and, as pointed out in the judgment, the Court treated the hearing as an application for a temporary injunction. The general tenor of the hearing proceeded as if that matter was before the Court, and at no time did the Defendants complain by special exception or by objection that a temporary injunction was not or could not be heard. We hold that the issuance of the temporary injunction was tried by implied consent of the parties. The defect in the pleadings was waived as it was not brought to the attention of the Court before the rendition of the judgment. Rules 67, 90, Tex.R.Civ.P.; *McKee v. City of Mt. Pleasant,* 328 S.W.2d 224 (Tex.Civ. App.—Texarkana 1959, no writ); 2 McDonald, Texas Civil Practice, Sec. 5.18 (1970). The first point is overruled.

■ The trial Court, in issuing the temporary injunction, found that its decision was not based upon lack of substantial evidence offered in the hearings previously described, and the Defendants point this out in their next series of complaints. Section 11A–10.1(c) of the Grading Ordinance is as follows:

"* * * The decision of the city council shall be final except to the extent that any person aggrieved by the decision, or any taxpayer, may appeal to a district court to determine whether the council's decision is reasonably supported by substantial evidence. * * *"

The Defendants contend that the Ordinance allows an appeal only in the event the substantial evidence standard was violated, and, unless such a violation occurred, the appeal is without merit. This contention

ignores the rule that the substantial evidence test is not applicable in instances where the attack on the administrative agency's order is made on the basis that an essential notice as called for in the administrative process was not made, 1 Tex.Jur.2d Administrative Law, Etc., Sec. 24 (1959), or where the agency has made an erroneous determination of a question of law. *City of Dallas v. Furrh,* 541 S.W.2d 271 (Tex.Civ. App.—Texarkana 1976, writ ref'd n. r. e.). Points of Error Nos. 2, 3 and 4 are overruled.

■ The Appellants' next series of points attack the Court's reasons for the issuance of the temporary injunction because regardless of earlier defects in the proceedings, the hearing before the City Council was a trial de novo, with the City Council having full power to initiate and grant the permit. In this connection, the Appellants point to a specific retention of power made by the City Council in the Grading Ordinance itself. Section 11A–10.1(c) provides as follows:

" * * * Upon the hearing of such appeal, the city council shall have the authority to vary the application of the chapter or rules, regulations and guidelines, or to modify the decision or action of the plan commission or administrative officer, if such variance or modification complies with the purposes of this chapter and is in the public interest. * * "

The Appellants argue that the City Council by the Ordinance itself has clearly reserved to itself the power and authority to grant a grading permit without any review or action whatsoever having previously been taken by the City Plan Commission.

We do not agree with the Appellants' argument for various reasons. In the first place, the reservation of power to the City Council to vary the application of the Chapter or rule, etc., as quoted above, is limited by the phrase that the variance or modification complies with the purpose of the Grading Ordinance. That Ordinance is most comprehensive and is sixteen printed pages in length. As applied to the mountain development area, it is plainly designed to insure that minimum grading shall result; that the mountain and other natural features will not be changed; and that irreparable scars will not be created. To insure that result, exact plans of all proposed activity are required to be submitted. Extensive planning and investigation is then called for by the City Engineer, by various registered engineers, by the City Department of Planning and Research, by the El Paso-Hudspeth Soil and Water Conservation District, and, finally, by the City Plan Commission, the latter conducting its hearing before the public which had been notified by at least ten days' newspaper notice. Only then could the City Plan Commission act, and then only after making extensive fact findings and recommendations. If all of the above can be eliminated as suggested by the Appellants, then the purpose of the Grading Ordinance would be changed so fundamentally as to be nonexistent. We hold that the clause quoted above does not reserve to the City Council the power under the Ordinance to eliminate the ten-day notice requirement, nor does it make it possible for the Appellants to proceed under their original application which called for a quarry without securing a zoning change or by making a new application for their permit.

Since the Ordinance within itself did not permit the City Council to make these drastic changes, then the City must follow the procedure it adopted in its Grading Ordinance. *Wallace v. Daniel,* 409 S.W.2d 184 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.). A series of zoning cases are cited by the Appellees for the principle that city councils and their administrative boards must follow established procedures in making zoning changes. The Appellants are correct in pointing out that these cases are not controlling here, as they dealt with situations where a city council attempted a zoning classification change in violation of limitations imposed by superior statutes. Thus, city council action has been prohibited from changing zoning classification without publishing notice at least fifteen days in advance in violation of Article

1011d, Tex.Rev.Civ.Stat.Ann., as in *Bolton v. Sparks,* 362 S.W.2d 946 (Tex.1962); where a city council attempted a zoning change where the zoning commission had failed to submit a report and recommendation to city council contrary to Article 1011f, as in *Smart v. Lloyd,* 370 S.W.2d 245 (Tex.Civ.App.—Texarkana 1963, no writ); where a zoning commission failed to notify property owners within 200 feet of the property of a public hearing at least ten days before the hearing in violation of Article 1011f, as in *Tonroy v. City of Lubbock,* 242 S.W.2d 816 (Tex.Civ.App.—Amarillo 1951, writ ref'd n. r. e.), *City of San Antonio v. Pope,* 351 S.W.2d 269 (Tex.Civ.App.—Eastland 1961, no writ), and *City of Amarillo v. Wagner,* 326 S.W.2d 863 (Tex.Civ.App.—Amarillo 1959, writ ref'd n. r. e.); where a city council attempted to change zoning classification without three-fourths of the members of the city council voting favorably; and where the change in the zoning classification had been protested by twenty percent or more of adjacent property owners and therefore attempting to act in violation of Article 1011e, as in *Truman v. Irwin,* 488 S.W.2d 907 (Tex.Civ.App.—Fort Worth 1972, no writ).

The Grading Ordinance was not adopted by the City of El Paso by virtue of the zoning powers granted by the Legislature to the City. The City of El Paso was incorporated under special charter, but with full home rule powers, and adopted the Grading Ordinance through its police powers. Admittedly, the City Council has the power to amend or abolish the Grading Ordinance. It has not done so and it has granted the permit to the Appellants upon a mere motion of the City Council. While the Appellees' zoning cases are not applicable, a basic principle underlying them does control our disposition of this case. We feel that the rules announced in the case of the *City of Hutchins v. Prasifka,* 450 S.W.2d 829 (Tex.1970), do apply. There it was pointed out that it takes a law to repeal a law, and that an act which destroys should be of equal dignity with that which established the procedure; that there is an essential difference between an ordinance and a motion; and that an ordinance may be repealed only by another ordinance and not by resolution or motion. To paraphrase *Bolton v. Sparks,* supra, we say that the steps directed to be taken for notice and hearing when provided for in the superior ordinance were intended for the protection of the property owner and his safeguard against the exercise of arbitrary power. Each act required was essential to the exercise of jurisdiction by the city council and each must be rigidly performed. The Grading Ordinance was designed to protect the community of El Paso, and there is good reason for procedural requirements to be followed, at least until that ordinance be amended by an amending ordinance. Points of Error Nos. 5, 6, 7, 8 and 9 are overruled.

Appellants' last point attacks the standing of two of the Appellees as no evidence was presented showing peculiar damages to them. The proof was that both were citizens of El Paso, homeowners, and one adjoined the property involved. The Grading Ordinance provides that any taxpayer may appeal to the City Council from the decision of the Plan Commission, and any taxpayer may appeal the decision of the City Council to the District Court. The point is overruled. *McCoy v. Williams,* 500 S.W.2d 178 (Tex.Civ.App.—El Paso 1973, writ ref'd n. r. e.).

Since the trial Court is allowed considerable discretion in the matter of granting a temporary injunction, and there has been no showing of an abuse of such discretion, and no showing of an erroneous application of law to conceded facts, the judgment is affirmed.