REVERSE, RENDER, and AFFIRM; and Opinion Filed April 15, 2013.



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-11-00582-CV

**TCI WEST END, INC, Appellant/Cross-Appellee**

**V.**

**CITY OF DALLAS AND TEXAS HISTORICAL COMMISSION, Appellees/Cross-Appellant**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 06-04868-H**

## OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion by Justice Richter

TCI West End, Inc. (TWE) appeals from the trial court's judgment awarding damages to the Texas Historical Commission (the THC) and civil penalties to the City of Dallas based on the jury's finding that TWE demolished a historic structure without the proper approval. TWE asserts five issues generally contending the trial court erred in failing to grant it's request for judgment notwithstanding the verdict because neither the THC nor the City was entitled to damages or penalties under the Texas Local Government Code. After reviewing the record and

---

[1] The Honorable Martin E. Richter, Retired Justice, sitting by assignment.

the arguments on appeal, we conclude the trial court erred in rendering judgment in favor of the THC and the City. Accordingly, we reverse the portion of the trial court's judgment awarding damages to the THC and civil penalties to the City and render judgment that the THC and the City take nothing by those claims.

## Background

The building at the center of this case is the remaining portion of the former Missouri, Kansas & Texas Railway freight station located in the West End Historic District in the City of Dallas. The City twice caused the demolition of parts of the station by condemning sections of the property for the extension of city streets. The remaining portion of the station contained about twenty thousand square feet of space with a two-story office building added to one end.

In March 2006, TWE applied for and was granted a permit to demolish what remained of the station. Sometime after the permit was issued, but before demolition began, the City determined that the permit had been issued improperly and revoked it. The City did not send written notice of the revocation to TWE as required by the Dallas City Code, but witnesses for the City testified they contacted TWE's contractor, who informed a TWE representative that the permit had been revoked. The City also presented testimony that a "red tag" was placed on the property on April 21, 2006 to notify TWE's contractor to cease work. TWE disputes receiving any notification and proceeded with demolition on April 29. Demolition stopped just short of completion on May 1 and this suit was filed by the City on May 16.

In its petition, the City asserted that TWE improperly demolished a historic building in violation of city ordinances and sought to recover civil penalties and injunctive relief under chapter 211 and chapter 54 of the Texas Local Government Code. The City alleged that TWE violated a variety of city ordinances including ordinance 21391, as amended by ordinance 22158,

2

which prohibits demolition of a structure within a historic overlay district without obtaining the proper approval. The City also alleged claims for fraud.

The THC filed a petition in intervention in the case asserting a claim against TWE under section 315.006 of the Texas Local Government Code. Section 315.006 allows the THC to bring an action to recover damages if a person demolishes a historic structure without appropriate written permission from the municipality. The THC may file suit under section 315.006 only if the municipality has failed to bring an action under the section within ninety days after the demolition occurred. Because the City did not assert a claim against TWE under section 315.006, the THC intervened to assert the claim.

The case was tried to a jury. The jury found in favor of both the City and the THC on their claims under the local government code. The jury also found in favor of the City on its claim for fraud. TWE filed a motion to disregard most of the jury findings and to enter judgment notwithstanding the verdict. The trial court granted TWE's motion to disregard in part and denied it in part. The final judgment signed by the trial court awarded the City $750,000 in civil penalties for violations of city ordinances 21391 and 22158 and awarded the THC $500,000 in damages under section 315.006. The trial court granted judgment notwithstanding the verdict on all other relief awarded to the City and the THC. TWE brings this appeal contending that the trial court erred in failing to grant judgment in its favor on the claims for civil penalties and damages brought by the City and the THC under the local government code. The THC cross-appeals contending the trial court erred in disregarding the jury's finding of exemplary damages.[2]

---

[2] The City also filed a cross-appeal challenging a partial summary judgment in favor of TWE dismissing the City's request for injunctive relief. This cross-appeal was dismissed on the City's own motion. The City does not challenge the trial court's granting of TWE's motion to disregard the jury's findings on the issue of fraud.

# Analysis

## The THC's Claim Under § 315.006

In its first issue, TWE contends the trial court erred in failing to grant judgment notwithstanding the verdict on the THC's claim for damages because the THC does not have a viable claim under section 315.006 of the Texas Local Government Code. Specifically, TWE argues there was no evidence that the filing requirements set forth in subsections (h) and (i) of section 315.006 were met and meeting those filing requirements is a prerequisite to recovery under the section.[3] The THC responds that the filing requirements do not apply to it and,

---

[3] Section 315.006 reads in its entirety:

(a) In this section, "historic structure or property" means a historic structure as defined by Section 442.001, Government Code, or a structure or property that is designated as historic by a political subdivision of the state, the state, or the federal government.

(b) A person is liable to a municipality for damages if the municipality has a demolition permit and a building permit procedure and the person:
 (1) demolishes, causes to be demolished, or otherwise adversely affects the structural, physical, or visual integrity of a historic structure or property that is located in the municipality; and
 (2) does not obtain the appropriate demolition or building permit or other form of written permission from the municipality before beginning to demolish, cause the demolition of, or otherwise adversely affect the structural, physical, or visual integrity of the structure or property.

(c) If the structural, physical, or visual integrity of the structure or property is adversely affected to the extent that it is not feasible to restore the structural, physical, or visual integrity substantially to its former level, the damages are equal to the cost of constructing, using as many of the original materials as possible, a new structure or property that is a reasonable facsimile of the historic structure or property and the cost of attorney's, architect's, and appraiser's fees and other costs related to the enforcement of this section. If it is feasible to restore the structural, physical, or visual integrity of the structure or property substantially to its former level, the damages are equal to the cost of the restoration, using as many of the original materials as possible, and the cost of attorney's, architect's, and appraiser's fees and other costs related to the enforcement of this section.

(d) Instead of accepting monetary damages, the municipality may permit the liable person to construct, using as many of the original materials as possible, a structure or property that is a reasonable facsimile of the demolished historic structure or property or to restore, using as many of the original materials as possible, the historic structure or property and to pay the cost of attorney's, architect's, and appraiser's fees and other costs related to the enforcement of this section.

(e) Damages recovered under this section shall be deposited in a special fund in the municipal treasury and may be used only to construct, using as many of the original materials as possible, a structure or property that is a reasonable facsimile of the demolished historic structure or property, to restore, using as many of the original materials as possible, the historic structure or property, or to restore another historic structure or property, as determined by the municipality.

(f) The construction of a facsimile structure or property under Subsection (d) or (e) must be undertaken at the location designated by the municipality, which may be the same location as that of the demolished historic structure or property.

(g) The municipality may make contracts and adopt ordinances as necessary to carry out this section.

4

therefore, the judgment in its favor should be sustained. It is undisputed that the filing requirements set forth in subsections (h) and (i) were not met in this case. Accordingly, the issue we must decide is one of statutory construction. We must determine whether the language of the statute grants the THC the ability to recover even in the absence of the required filing.

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). Our primary objective in construing a statute is to give effect to the legislature's intent. *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). To discern that intent, we begin with the plain and common meaning of the statute's words. *Id.* If the statute's language is unambiguous, we interpret it according to its terms, giving meaning consistent with the statute's other provisions. *Id.* We may consider, among other things, the objective the law seeks to obtain and the consequences of a particular

---

(h) Each municipality shall file in the real property records of the county clerk's office of each county in which the municipality is located a verified written instrument listing each historic structure or property that is located in the municipality and county and is designated as historic by a political subdivision of the state by:
    (1) the street address, if available in the municipal files;
    (2) the legal description of the real property on which the structure or property is located; and
    (3) the name of the owner of the real property, if the name is available in the municipal files.

(i) Subsections (a) through (g) of this section apply only to a historic structure or property on or after the date the instrument has been filed under Subsection (h) and indexed.

(j) A person is liable to the Texas Historical Commission for damages if:

    (1) the person:
        (A) demolishes, causes to be demolished, or otherwise adversely affects the structural, physical, or visual integrity of a historic structure or property that is located in the municipality; and
        (B) does not obtain the appropriate demolition or building permit or other form of written permission from the municipality before beginning to demolish, cause the demolition of, or otherwise adversely affect the structural, physical, or visual integrity of the structure or property; and

    (2) the commission determines that the municipality has not filed a civil action under Subsection (b) and has not taken appropriate action to carry out Subsection (d) before the 90th day after the date the action described by Subdivision (1)(A) occurs.

(k) If the Texas Historical Commission makes a determination under Subsection (j)(2), the commission may enforce this section, and the municipality may not act under this section. Damages recovered under this subsection shall be deposited in the Texas preservation trust fund account.

TEX. LOC. GOV'T CODE ANN. § 315.006 (West 2005)

construction. *Id.; see also* TEX. GOV'T CODE ANN. § 311.023 (West 2005). Finally, we read the statute as a whole and not just isolated portions. *See Sunset Valley*, 146 S.W.3d at 642.

The title of section 315.006 is "Liability for Adversely Affecting Historic Structure or Property." *See* TEX. LOC. GOV'T CODE ANN. § 315.006 (West 2005). Subsections (a) through (g) set out a cause of action that may be brought by a municipality to recover equitable and/or monetary damages from a person who "adversely affects the structural, physical, or visual integrity" of a historic structure or property without the proper written permission from the municipality. *Id.* Subsection (h) requires the municipality to file in the real property records of the county clerk's office a "verified written instrument listing each historic structure or property that is located in the municipality and county . . . ." *Id.* Subsection (i) renders subsection (a) through (g) inapplicable until after the municipality files and indexes the verified written listing of historic structures. *Id.*

Subsections (j) and (k) of section 315.006 set out a cause of action that may be brought by the THC against a person who adversely affects a historic structure. *Id.* A person may be liable to the THC based on the same conduct that creates liability to a municipality. *Id.* Before the THC may bring suit, however, it must determine that the municipality did not file a civil action under section 315.006 within ninety days after the historic structure or property was adversely affected. *Id.* Only if the municipality fails to file suit under the section may the THC "enforce this section" and recover damages. *Id.* If the THC brings suit under the section, the municipality is no longer permitted to do so. *Id.*

TWE contends that the THC cannot enforce section 315.006 because the City did not file and index a verified listing of historic structures and properties before the freight station was demolished. The THC responds that the City's failure to fulfill the filing requirement does affect

6

the THC's claims because the absence of a filing only prevents the City from bringing a claim under subsection (a) through (g) and has no effect on the THC's ability to bring a claim under subsections (j) and (k). We conclude the THC's interpretation of section 315.006 is not supported by either the language of the statute or its purpose.

Subsections (j) and (k) of section 315.006 allow the THC to step into the shoes of the City and enforce the section if the City fails to do so. The THC relies on the fact that subsection (i) states that the failure to make the necessary filing renders only subsections (a) through (g) inapplicable and there is no reference to the THC's right to bring suit under subsections (j) and (k). Subsection (k), however, grants the THC the right to "enforce this section." *Id.* Critical portions of the section, including the definition of a historic structure for purposes of the section and the types of relief that may be awarded, are found in subsections (a) through (g). Without these subsections, there is no effective section for the THC to enforce.

The THC argues that it may bring suit without applying subsections (a) through (g) because the necessary definition of a historic structure and the applicable forms of relief may be found by reference to other statutes and the common law. Nothing in the language of section 315.006, however, suggests that the legislature intended the THC to "enforce [the] section" by referencing other laws that are substantively different than the provisions of the statute sought to be enforced.

The THC contends that its enforcement of the section may be "guided by" the definition of a historic structure found in section 442.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 442.001 (West 2012). Indeed, the definition of a historic structure found in subsection (a) of section 315.006 references section 442. Subsection (a) goes on, however, to expand the definition to include not only those properties that meet the definition found in

section 442.001, but also any "structure or property that is designated as historic by a political subdivision of the state, the state, or the federal government." TEX. LOC. GOV'T CODE ANN. § 315.006(a). Subsection (a) further states that this expanded definition is to be used for purposes of the section which necessarily includes enforcement of the section by the THC under subsections (j) and (k). Accordingly, the THC's assertion that it can enforce the section using a definition that is substantively different than the one provided by the section is not supported by the statute's language.

With respect to damages, the THC appears to argue that the statutory remedies set out by the legislature in subsections (c), (d), and (e) do not apply to a suit brought by the THC. The THC contends, therefore, that its inability to enforce subsections (c), (d), and (e) does not affect its ability to bring suit. Much like subsection (b) that creates liability to the municipality, subsections (j) and (k) contain no specific reference to the remedies set out in subsections (c) through (e). *Id.* § 315.006(j),(k). Despite this similarity between subsection (b) and subsections (j) and (k), the THC states that because (j) and (k) contain no reference to subsections (c) through (e), the legislature intended for the commission to look to the common law for available remedies. Again, the THC ignores the plain language of the statute which grants the THC the power to "enforce this section." The THC does not enforce the section if it seeks relief under the common law rather than the statutory remedies outlined by the legislature.

The THC next contends that the purpose of subsections (j) and (k) is to allow it to act when the City fails to do so and that predicating the THC's ability to bring suit on the City filing the required verified listing belies that purpose. The THC's argument is not well taken. The purpose of subsections (j) and (k) is to allow the THC to bring suit when the City fails to do so, not when the City is prohibited from doing so because it did not meet the filing requirement. To

allow the THC to bring suit when the City could not defeats the purpose of the filing requirement. As noted by the THC, a construction that renders a portion of the statute useless is not favored by the law. *See Carson v. Hudson*, 398 S.W.2d 321, 323 (Tex. App.—Dallas 1966, no writ).

A construction of section 315.006 that prohibits the THC from bringing suit unless the required list of historic structures and properties has been filed is bolstered by the existence of the identical requirement in section 442.016 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 442.016. Section 442.016 mirrors the provisions of section 315.006 and allows the THC to bring suit in municipalities that do not have demolition and building permit procedures. *Id.* § 442.016(b). Under section 442.016, the THC must file and index a verified listing of the historic structures and properties and, absent such filing, it may not bring suit under the section. *See id.* § 442.016(h) & (i). Because the legislature included filing requirements in both sections 315.006 and 442.016, it is clear the legislature intended to predicate the ability to bring suit on the required filing in the property records regardless of whether suit is brought by a municipality or the THC.

The THC contends that because the legislature required it to file a verified listing under section 442.016, but did not impose the same requirement on it in section 315.006, such a requirement cannot be implied. A filing requirement need not be implied in section 315.006, however, because it is already explicit in the statute. Although section 315.006 requires the municipality to make the required filing rather than the THC, the THC steps into the shoes of the municipality when it enforces the statute. Again, to allow the THC to bring suit when the City could not would render the statute's filing requirement superfluous.

9

Finally, the THC argues that even if the filing requirement applies, it was satisfied by the fact that TWE had actual notice that the freight station was a historic structure. The THC then cites to numerous cases addressing statutory service requirements that are satisfied by actual notice. *See, e.g., Washington v. Related Arbor Court, LLC*, 357 S.W.3d 676, 681 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Even assuming TWE had notice that the freight station was a historic structure, the THC's analogy of section 315.006's filing requirement to statutes addressing personal service is misplaced. The filing requirement in section 315.006 does more than provide property owners with notice that their properties have been designated as historic; it is the means by which the rights granted to the municipality and the THC under the section come into being.

Subsection (i) states that the rights and remedies created by section 315.006 "apply only to a historic structure or property on or after the date the [verified written listing] has been filed under subsection (h) and indexed." TEX. LOC. GOV'T CODE ANN §15.006(i). The verified list, therefore, operates much like an abstract of judgment that, when filed and indexed in the county property records, creates rights in favor of a non-owner that attach and run with the property. *Cf. Gordon v. West Houston Trees, Ltd.* 352 S.W.3d 32, 38-9 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Also like the rights associated with filing an abstract of judgment, and unlike the statutory service provisions cited by the THC, the rights afforded under section 315.006 are created by statute requiring substantial compliance with the statute before those rights may be enforced. *Cf. id.* at 39. If the statutory filing requirements are not substantially complied with, the statutory rights may not be enforced regardless of whether the property owner had actual knowledge of the information that should have been contained in the filing. *Cf. Citicorp Real*

10

*Estate, Inc. v. Banque Arabe Internationale D'Invetissement*, 747 S.W.2d 926, 931 (Tex. App.—Dallas, 1988, writ denied).

There is nothing in the record to show, nor is there any jury finding to the effect that the City substantially complied with the filing requirement set forth in subsections (h) and (i) of section 315.006. We conclude, therefore, that the plain language of the statute prohibits the THC from recovering under the section. The trial court erred in failing to grant a judgment notwithstanding the verdict on the THC's claim under section 315.006. Because we conclude the THC was not entitled to relief under section 315.006, it is unnecessary for us to address its cross-appeal challenging the trial court's refusal to award the THC exemplary damages.

**The City's Claim Under Chapters 211 and 54**

We next address TWE's challenge to the City's recovery of civil penalties based on the jury's finding that TWE demolished a building in the West End Historic District without the proper permits in violation of city ordinance 21391 as amended by ordinance 22158. The City sought civil penalties for the alleged ordinance violations under both chapter 211 and chapter 54 of the Texas Local Government Code.

Chapter 211 grants municipalities general zoning authority. *See* TEX. LOC. GOV'T CODE ANN. Ch. 211 (West 2008). Among the purposes of the chapter is to provide municipalities with zoning authority for "protecting and preserving places and areas of historical, cultural, or architectural importance and significance." *Id.*§ 211.001. Chapter 211 includes enforcement provisions such as section 211.012 which states that a municipality "may also provide civil penalties" for a violation of an ordinance or regulation adopted under the municipality's general zoning authority. *Id.*§ 211.012(b). Chapter 211 does not specifically provide civil penalties for ordinance violations, but allows the city to adopt such penalties should it choose to do so. *Id.*

11

The ordinances at issue were adopted by the City under chapter 51A of the Dallas City Code, which regulates historic overlay districts such as the West End Historic District. *See,* Dallas, Tex., City Code Ch. 51A. The ordinances themselves provide criminal fines for violations, but leave the adoption of civil penalties open to further action by the City. The City cites no provision by which it adopted civil penalties for violations of ordinances 21391 and 22158.

City code section 51A-4.501(n) addresses enforcement of historic overlay district ordinances. With respect to civil remedies, the section merely references section 315.006 of the local government code, which allows for the recovery of damages, not penalties. As discussed above, TWE cannot be held liable for damages under section 315.006 because the City failed to file the required listing of historic structures in the county property records. Because the City did not adopt civil penalties for violations of the ordinances at issue, section 211 of the local government code does not provide a basis of the award of penalties in the trial court's judgment.

The language in the jury charge by which the jury assessed civil penalties against TWE essentially tracks the language for the assessment of such penalties under subchapter B of chapter 54 of the local government code. TWE contends the City cannot rely on subchapter B as a basis to recover penalties because the subchapter does not apply to the ordinances at issue. We agree.

Subchapter B of chapter 54 addresses the enforcement of municipal health and safety ordinances. *See* TEX. LOC. GOV'T CODE ANN. Ch. 54, Subch. B. (West 2008). The civil penalties provision of the subchapter is found in section 54.017. *Id.* § 54.017. The City concedes that section 54.017 provides civil penalties only for a violation of an ordinance that

regulates a health or safety matter. What the City fails to show is how the zoning ordinances at issue here are health or safety ordinances.

As this Court has held, the enforcement provisions of subchapter B do not apply to general zoning ordinances regulating the use of land.[4] *See Hollingsworth v. City of* Dallas, 931 S.W.2d 699, 703 (Tex. App.—Dallas 1996, writ denied). All of the sections of subchapter B, including the enforcement provisions, relate only to health and safety matters. *See* Texas Att'y Gen. No. GA-0267 (2004). Ordinances that generally regulate the use of land must be enforced pursuant to the provisions of chapter 211 and the provisions of subchapter B of chapter 54 do not apply. *See Hollingsworth*, 931 S.W.2d at 703.

The stated purpose of ordinances 21391 and 22158 is to protect buildings of historical, cultural, and architectural significance in the West End Historic District. There is no indication that these ordinances, or their attempted enforcement in this case, are attempts to regulate a health or safety issue. As such, section 54.017 cannot form the basis for the civil penalties awarded to the City.

Even if section 54.017 were applicable to the ordinances at issue, TWE contends the evidence was insufficient to support the jury's findings in support of the penalties. The jury was instructed that the City could recover penalties if it proved that: (1) TWE was actually notified of the ordinances; and (2) after receiving actual notice, TWE committed acts in violation of the ordinances or failed to take an action necessary for compliance with the ordinances. TWE contends there is no evidence that it was ever actually notified of ordinances 21391 and 22158.

At trial, the City presented evidence that a TWE representative was informed of some of the requirements for obtaining a demolition permit in the West End Historic District. These

---

[4] In *Hollingsworth*, we addressed the applicability of section 54.016 which provides for injunctive relief. *See id.* The same reasoning applies to the civil penalties provided by section 54.017.

requirements were mandated by the ordinances at issue. Although the City presented evidence that TWE was notified of some of the permit requirements, it presented no evidence that TWE was ever informed of the ordinance provisions themselves before the building was demolished. The actual notice provision in section 54.017 allows civil penalties to be assessed against a property owner who knowingly violates a city ordinance. A property owner cannot knowingly violate a city ordinance if he is not notified that the ordinance exists. Therefore, even assuming that section 54.017 applies, the City failed to prove it was entitled to an award of civil penalties under that section. Because the civil penalties awarded to the City were improper under both chapter 211 and chapter 54 of the local government code, the trial court erred in denying TWE's request for a judgment notwithstanding the verdict on the City's claim for civil penalties. Having concluded that neither the THC nor the City was entitled to relief awarded, it is unnecessary for us to address TWE's remaining arguments.

Based on the foregoing, we reverse the trial court's judgment to the extent it awards damages to the THC on its claim under section 315.006 of the local government code and awards civil penalties to the City on its claim under chapters 211 and 54 of the local government code. We render judgment that the THC and the City take nothing by those claims. In all other respects, the trial court's judgment is affirmed.

MARTIN RICHTER
JUSTICE, ASSIGNED

110582F.P05

14



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEXAS WEST END, INC, Appellant

No. 05-11-00582-CV     V.

CITY OF DALLAS and TEXAS
HISTORICAL COMMISSION, Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 06-04868-H.
Opinion delivered by Justice Richter.
Justices FitzGerald and Fillmore
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's
judgment awarding damages to the Texas Historical Commission and that portion of the
judgment awarding civil penalties to the City of Dallas. We **RENDER** judgment that the Texas
Historical Commission and the City of Dallas take nothing by those claims. In all other respects,
the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellant TEXAS WEST END, INC recover its costs of this appeal
from appellees CITY OF DALLAS and TEXAS HISTORICAL COMMISSION.


Judgment entered this 15th day of April, 2013.


MARTIN RICHTER
JUSTICE, ASSIGNED