# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0795
════════════

CITY OF DALLAS, PETITIONER,

v.

TCI WEST END, INC., RESPONDENT

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
════════════════════════════════════════════════════

**PER CURIAM**

Section 54.012(3) of the Texas Local Government Code authorizes a municipality to pursue a civil action against a property owner to enforce an ordinance "for zoning that provides for the use of land or classifies a parcel of land according to the municipality's district classification scheme." TEX. LOC. GOV'T CODE § 54.012(3). Despite section 54.012(3)'s clear and unambiguous language, the court of appeals held that a municipality cannot pursue a civil action under that statute for violations of "general zoning ordinances regulating the use of land." 407 S.W.3d 292, 301 (Tex. App.—Dallas 2013). Because the court of appeals' holding is incompatible with the statute's plain language, we reverse the court's judgment and remand the case to the court of appeals for further proceedings.

The City of Dallas contends that TCI West End, Inc. (TCI) demolished a building located in a historic overlay district in violation of a city ordinance. *See* Dallas City Ordinance No. 21391, as amended by Ordinance No. 22158, § 7.1 (requiring building owner, prior to demolishing or altering

building located in historic overlay district, to apply for determination as to whether structure is "contributing structure" subject to strict demolition requirements); *see also id.* at § 4 (incorporating chapter 51A of the Dallas City Code); Dallas, Tex. City Code § 51A—4.501(a)—(p) (regulating historic overlay districts).[1] Among other claims, the City sued TCI for civil penalties under section 54.017 of the Texas Local Government Code, as authorized by section 54.012 of the code. *See* TEX. LOC. GOV'T CODE § 54.012 (listing types of ordinances municipality can enforce by civil action), .017 (authorizing civil penalties for ordinance violations). Following a jury verdict in the City's favor, the trial court rendered judgment awarding the City $750,000 in civil penalties.

The court of appeals reversed, holding that sections 54.012 and 54.017 apply only to health and safety ordinances, not "general zoning ordinances regulating the use of land." 407 S.W.3d at 301. In the alternative, the court held that the City presented no evidence that TCI was informed about the relevant ordinance provision before demolishing the building, as required to obtain civil penalties under section 54.017. *Id.* at 301. On rehearing, one justice dissented on both counts, explaining that (1) sections 54.012 and 54.017 do not contain the health-and-safety limitation imposed by the court and (2) sufficient evidence supported the jury's finding that TCI had actual notice of the ordinance provision before demolishing the building. *Id.* at 302–05.

Although other issues have been raised on appeal, the threshold issues are (1) whether sections 54.012(3) and 54.017 are limited to enforcement of "health and safety" zoning ordinances; and (2) whether section 54.017 requires that actual notice be effected *before* violation of the

---

[1] The ordinance defines a "contributing structure" as one that "retains its essential architectural integrity of design and whose architectural style is typical or integral to [the] district."

applicable ordinance.[2]  These matters present questions of law that we review de novo.  *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

Our primary objective in construing a statute is to give effect to the Legislature's intent as expressed in the statute's plain language.  *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).  We consider the statute as a whole, rather then viewing individual provisions in isolation, and presume the Legislature selected the statute's language with care, choosing each word for a purpose and purposefully omitting words not chosen.  *Id.*  We must avoid adopting an interpretation that "renders any part of the statute meaningless."  *Crosstex Energy Servs, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014).

Section 54.012, which is located in chapter 54, subchapter B of the local government code, authorizes a municipality to pursue a civil action against a property owner to enforce several categories of ordinances, including "an ordinance . . . for zoning that provides for the use of land or classifies a parcel of land according to the municipality's district classification scheme." TEX. LOC. GOV'T CODE § 54.012.[3]  The remaining provisions in subchapter B address the rules, procedures, and relief available for a civil action authorized by section 54.012. *See id.* §§ 54.013–.020.  Among other available remedies, section 54.017 permits a municipality to recover civil penalties, up to specified limits, upon proof that:

(1) the defendant was actually notified of the provisions of the ordinance; and

(2) after the defendant received notice of the ordinance provisions, the defendant committed acts in violation of the ordinance or failed to take action necessary for

---

[2] The City has not appealed adverse holdings by the trial court and court of appeals on its other claims.

[3] Although the statute has been amended since the events giving rise to this litigation, the changes are not material to the issues on appeal; accordingly, we cite the current version of the statute for convenience.

compliance with the ordinance.

*Id.* § 54.017.

The court of appeals determined that all the provisions in subchapter B, including sections 54.012(3) and 54.017, "relate only" to health and safety matters and thus do not apply to general zoning ordinances regulating the use of land. 407 S.W.3d at 301. The court further held that the City's historic-district regulation does not qualify for enforcement as a health-and-safety ordinance under subchapter B because its stated purpose is to "protect buildings of historical, cultural, and architectural significance" in the historic overlay district. *Id.* (citing Dallas City Ordinance No. 21391, as amended by Ordinance No. 22158). As a result, the court concluded that the ordinance can only be enforced under chapter 211 of the local government code, *id.*, which governs municipal zoning and has a stated purpose of "promoting the public health, safety, morals, or general welfare and protecting and preserving places and areas of historical, cultural, or architectural importance and significance," TEX. LOC. GOV'T CODE § 211.001.

To support this construction of subchapter B, the court of appeals cited a Texas Attorney General opinion limiting the statute's application to health and safety matters because (1) it is entitled "Municipal Health and Safety Ordinances" and (2) section 54.012 specifically refers to those types of matters in some of its subsections. *Id.* (citing Tex. Att'y Gen. Op. No. GA-0267 (2004)). The court also cited *Hollingsworth v. City of Dallas*, 931 S.W.2d 699 (Tex. App.—Dallas 1996, writ denied), in which the court had previously resolved an apparent conflict between the injunctive-relief provisions in chapters 54 and 211 as they pertain to general zoning ordinances regulating the use of land. In *Hollingsworth*, a property owner had argued that the City of Dallas could not obtain injunctive relief for a zoning-ordinance violation without complying with section 54.106, which

4

authorizes injunctive relief only on "a showing of substantial danger of injury or an adverse health impact to any person or to the property of any person other than the defendant." *Id.* at 702; TEX. LOC. GOV'T CODE § 54.016. Section 211.012(c)'s injunctive-relief remedy includes no similar requirement.[4] TEX. LOC. GOV'T CODE § 211.012(c). The court resolved the conflict in favor of section 211.012's application because it specifically applies to ordinances regulating the use of land and section 54.016 does not. 931 S.W.2d at 703 (construing statutes to avoid creating a conflict and determining that "the Legislature intended section 211.012 to apply to ordinances regulating the use of land and intended section 54.016 to apply to other types of ordinances not at issue").

We hold that the court of appeals' interpretation of section 54.012(3) as incorporating a health-and-safety limitation is contrary to the plain and unambiguous language in the statute and would render meaningless and redundant language in that section expressly circumscribing other categories of ordinances enforceable under subchapter B.

Section 54.012(3) expressly authorizes municipalities, such as the City, to enforce ordinances "for zoning that provides for the use of land or classifies a parcel of land according to the municipality's district classification scheme." TEX. LOC. GOV'T CODE § 54.012(3). Section 54.012(3)'s language plainly encompasses the zoning ordinance at issue in this case, and neither the words "health" and "safety" nor analogous limitations are included anywhere therein. In comparison, at least three other subsections of section 54.012 expressly limit the types of ordinances that may be enforced to those involving health or safety matters or use comparable terminology. *See*

___

[4] Section 211.012(a) authorizes a municipality to adopt ordinances to enforce (1) the provisions of chapter 211, subchapter A, which imbues municipalities with the authority to adopt general zoning regulations, and (2) any ordinance or regulation adopted thereunder. TEX. LOC. GOV'T CODE § 211.012. Section 211.012(c) provides that "in addition to other remedies," a municipal authority may obtain an injunction "[i]f a building or other structure is erected, constructed, reconstructed, altered, repaired, converted, or maintained . . . in violation of this subchapter or an ordinance or regulation adopted under this subchapter."

5

*id.* § 54.012(1) (pertaining to ordinances "for the preservation of public safety, relating to [building construction]"), .012(2) (referring to ordinances "relating to the preservation of public health or to the fire safety of a building or other structure or improvement"), .012(6) (applying to ordinances "relating to dangerously damaged or deteriorated structures or improvements").

As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous. *Crosstex*, 430 S.W.3d at 390. By interposing a limitation into subsection (3) that the Legislature deliberately chose to include in some—but not all—of section 54.012's subparts, the court of appeals' construction of the statute defeats the purpose of the Legislature's carefully chosen words. This we cannot abide.

We likewise do not attribute decisive weight to subchapter B's title because "[t]he heading of a title, subtitle, chapter, or section does not limit or expand the meaning of a statute." *See* TEX. GOV'T CODE § 311.024; *see also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809 (Tex. 2010).

Nor do we perceive a fatal conflict between chapter 54, subchapter B and chapter 211 that would render the former wholly inapplicable to a general land-use ordinance despite its plain language. Chapter 54 provides municipalities with general authority to enforce ordinances whereas chapter 211 grants municipalities specific authority to pass substantive ordinances regulating zoning. Whatever conflict may exist between the injunctive relief available under each of these statutory schemes, we cannot say that the statutes are mutually exclusive merely because they overlap in scope. Although both statutory schemes authorize recovery of civil penalties, the availability of the particular remedies hinge on distinct procedural mechanisms. Chapter 54 creates a framework for pursuing civil penalties for specific conduct while chapter 211 permits, but does not require, municipalities to adopt civil penalties for the violation of an ordinance adopted under that chapter.

6

*Compare* TEX. LOC. GOV'T CODE § 54.017 *with id.* § 211.012(b). The City's election to forego adopting specific civil penalties for violations of specific zoning ordinances does not preclude the City from pursuing the remedies already available to it under chapter 54, subchapter B, on the terms provided therein.

Applying section 54.012(3)'s plain language, we conclude that chapter 54, subchapter B authorizes a suit for civil penalties based on a violation of the land-use restrictions embodied in Dallas City Ordinance No. 21391, as amended by Ordinance No. 22158. The court of appeals' contrary holding is erroneous.

In an alternative holding, the court of appeals determined that the City's civil-penalty claim would fail on the merits due to legally insufficient evidence that TCI had received actual notice of the ordinance provision before it demolished the building in violation of the ordinance. Although acknowledging the existence of evidence that TCI had actual notice of some of the requirements for obtaining a demolition permit for buildings in the historic district, the court held that the City "presented no evidence that [TCI] was ever informed of the ordinance provisions themselves *before the building was demolished*." 407 S.W.3d at 301 (emphasis added).

Regardless of the validity of the court's assessment of the evidence, which we need not consider, the court's analysis fails because section 54.017 authorizes an award of civil penalties if the defendant violated an ordinance after receiving notice of its provisions *or failed to take action necessary for compliance with the ordinance after receiving such notice*. TEX. LOC. GOV'T CODE § 54.017(a). The statute's use of "or," a disjunctive, identifies two alternative bases for recovering civil penalties. *See id.*; *see also City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 642 (Tex. 2013). The City asserts that the court of appeals erred because there is some evidence that, even if

7

TCI did not receive actual notice of the ordinance provisions until after it had already violated the ordinance by demolishing the building, TCI could have sought a post-demolition permit or taken other steps "necessary for compliance with the ordinance after receiving such notice." In response, TCI contends that it could not possibly have complied with the ordinance after it demolished the building, because "to bring itself into compliance with the ordinance *after* demolition, [TCI] would have to obtain approval from the Landmark Commission *before* the demolition."

The court of appeals did not address these arguments. Instead, it concluded that there was no evidence that TCI had actual notice before it "violated an ordinance" by demolishing the building, without considering whether TCI could have "take[n] action necessary for compliance with the ordinance after receiving such notice." Without addressing whether, in fact, TCI could have taken action to comply with the ordinance after receiving actual notice of the ordinance, we agree with the City that the court of appeals erred in failing to consider whether the civil-penalty award could be sustained under this alternative statutory ground.

Accordingly, without hearing oral argument, we reverse the portion of the court of appeals' judgment concluding that chapter 54, subchapter B does not authorize the City's enforcement action against TCI and remand the cause to that court for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** May 8, 2015

8