**TCI WEST END, INC, Appellant**

**v.**

**CITY OF DALLAS, Appellee**

**No. 05–11–00582–CV**

Court of Appeals of Texas,
Dallas.

Opinion Filed March 9, 2016

Thomas V. Murto III, Melissa A. Johnson, Mitchell Madden, Dallas, TX, for appellants.

Barbara E. Rosenberg, Christopher J. Caso, Thomas P. Perkins, Jr., James B. Pinson, Christopher D. Bowers, Dallas, TX, for appellees.

Before Justices Fillmore, Evans[1], and Whitehill[2]

## OPINION ON REMAND

Opinion by Justice Evans

This case comes to us on remand from the Texas Supreme Court.

### I. Introduction

The central issue is whether the City of Dallas may recover civil penalties from

TCI West End, Inc. under section 54.017 of the Texas Local Government Code based on TCI's demolition of the MKT Freight Station, a building in the West End Historic District, without the prior approval of the Landmark Commission of the City of Dallas. According to the City, prior approval of the landmark commission was required by city ordinance 21391, as amended by ordinance 22158. In our original opinion, we concluded, among other things, that the civil penalty provision relied upon by the City, which is found in the portion of the Texas Local Government Code pertaining to the enforcement of health and safety ordinances, did not apply to ordinances unrelated to health or safety. *See TCI West End v. City of Dallas*, 407 S.W.3d 292, 301 (Tex.App.—Dallas 2013) (*TCI West End I*), rev'd in part, *City of Dallas v. TCI West End*, 463 S.W.3d 53 (Tex.2015) (*TCI West End II*). The supreme court disagreed, holding that the penalty provision could be applied to the zoning ordinances at issue. *TCI West End II*, 463 S.W.3d at 58.

We further concluded in our original opinion that the City failed to prove the notice required for application of the penalty provision because there was no evidence that TCI was actually notified of the ordinances before it demolished the building. *TCI West End I*, 407 S.W.3d at 301. Without addressing this holding, the supreme court remanded the cause to us to determine whether TCI could be held liable for civil penalties for failing to obtain landmark commission approval for the demolition after the demolition was completed and TCI was notified of its alleged violation. *TCI West End II*, 463 S.W.3d at

---

1. The Honorable Justice Martin Richter was a member of the original panel and authored the original opinion. The Honorable Justice David Evans replaces Justice Richter on the panel.

2. The Honorable Justice Bill Whitehill succeeded the Honorable Justice Kerry P. Fitz-Gerald, a member of the original panel, upon Justice FitzGerald's retirement.

58. Given the supreme court's holding regarding the applicability of the penalty provision to the ordinances at issue, and the record before us on appeal, we must affirm the award of civil penalties in this case. Because the background of the case has been set forth in the prior opinions, we discuss the facts only as they are relevant to the analysis of the issues presented.

## II. Enforceability of the Ordinances

■ The jury in this case awarded the City civil penalties in response to the following questions:

*Question No. 11.*

Did TCI West End violate the provisions of Ordinance No. 21391, as amended by Ordinance No. 22158, which provides that a person may not demolish a structure within the West End Historic District without first obtaining approval of the Landmark Commission of the City of Dallas?

To answer "Yes" to this question, you must find all of the following:

(a) TCI West End, Inc. was the owner of the real property where the MKT freight station was located at the time of the violation;

(b) TCI West End, Inc. was actually notified of the foregoing provisions of Ordinance No. 21391, as amended by Ordinance No. 22158; and

(c) Thereafter TCI West End, Inc. committed acts in violation of these provisions or failed to take action necessary for compliance with these provisions.

Answer "Yes" or "No."

Answer: _____*yes*_____

*Question No. 12:*

If the answer to Question Number 11 is "Yes," what civil penalty should be imposed against TCI West End, Inc. for each day the condition found by you in answer to Question No. 11 existed, not to exceed $1,000 per day?

You are instructed that if the City stopped or prevented TCI West End, Inc. from taking action necessary for complying with Ordinance No. 21391, as amended by Ordinance No. 22158, you shall not consider those days in your calculation of the number of days that such condition existed.

Answer in dollars and cents, if any.

Answer: _____*$750,000.00*_____

The jury was further instructed that the City could recover a civil penalty only if it proved that

(1) the property owner was actually notified of the ordinance, and (2) after the property owner received notice of the violations of the ordinance, the property owner committed acts in violation of the ordinance or failed to take action necessary for compliance with the ordinance.[3]

TCI first argues that it cannot be held liable for violating the ordinances as a matter of law because the ordinances were not effective at the time of the demolition. In making this argument, TCI relies on section 51A–4.501(f)(2) of the Dallas Development Code, which states that "upon passage of an historic overlay district ordinance, the director shall file a copy of the ordinance in the county deed records to

**3.** The instruction generally tracks the language of section 54.017 of the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 54.017 (West 2008). However, the instruction states that the City must prove the property owner acted in violation of the ordinance, or failed to take action to comply with the ordinance, after being notified of an ordi-

nance *violation*. There was no objection to this instruction; so, although the parties address their arguments to the statute, our analysis of the evidence must be made in light of the instruction given. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

give notice of the historic regulations." *See* DALLAS DEVELOPMENT CODE § 51A–4.501(f)(2). TCI contends there is no evidence that either ordinance 21391 or ordinance 22158 was ever filed in the county deed records before the building was demolished and there is conclusive evidence they were not. Because the filing requirement was not met, TCI argues the ordinances at issue were unenforceable.

TCI cites two cases to support its argument that the ordinances were not enforceable against it: *Bolton v. Sparks*, 362 S.W.2d 946 (Tex.1962) and *Appolo Development, Inc. v. City of Garland*, 476 S.W.2d 365 (Tex.App.—Dallas 1972, writ ref'd n.r.e.). In both *Bolton* and *Appolo*, the courts held that the zoning ordinances at issue were invalid because they did not comply with the mandatory notice and hearing provisions of the superior state zoning statute. *See Bolton*, 362 S.W.2d at 950; *Appolo*, 476 S.W.2d at 367–68. The supreme court held in *Bolton* that "[m]unicipal ordinances must conform to the limitations imposed by the superior statutes, and only where the ordinance is consistent with them, and each of them, will it be enforced." *See Bolton*, 362 S.W.2d at 950. The superior state statute at issue in *Bolton* and *Appolo* explicitly required that, with respect to zoning ordinances, "no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto ... [and a]t least 15 days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality." *See Bolton*, 362 S.W.2d at 949; *Appolo*, 476 S.W.2d at 366. It was undisputed in both *Bolton* and *Appolo* that no public hearing with proper notice was conducted.

TCI would have us read *Bolton* and *Appolo* to mean that every requirement pertaining to ordinances, regardless of the language used in the requirement, must be rigidly performed or the ordinance is invalid. We do not read the cases so broadly. We apply the same rules to construe municipal ordinances as those used to construe statutes. *See CPM Trust v. City of Plano*, 461 S.W.3d 661, 669 (Tex.App.—Dallas 2015, no pet.). Our objective in construing municipal zoning ordinance provisions is to discern the city's intent. *Id.* at 669–70. We should not assign a meaning to a provision that would be inconsistent with other provisions. *Id.* at 670.

In *Bolton* and *Appolo*, the authorizing statute explicitly stated that compliance with the notice and hearing requirements was necessary for the zoning ordinance to be effective. No such limitation on effectiveness is present in the filing requirement language of section 51A–4.501(f)(2). In addition to the section's ordinance filing requirement, the second part of section 51A–4.501(f)(2) references section 315.006 of the Texas Local Government Code, which requires the filing of a verified list of historic structures in the county deed records before a city may seek damages for the demolition of a historic structure. *See* TEX. LOC. GOV'T CODE ANN. § 315.006(h)–(i) (West 2005). Like the requirements for effectiveness at issue in *Bolton* and *Appolo*, section 315.006 makes compliance with the filing requirement a prerequisite to enforceability. Given that section 51A–4.501(f)(2) references a statute that explicitly conditions enforceability on compliance with a filing requirement, but section 51A–4.501(f)(2) does not contain any similar language conditioning the historic overlay district ordinance's effectiveness on compliance with section 51A–4.501(f)(2)'s filing requirement, we must conclude that the City did not intend for the effectiveness of the historic overlay district ordinance to be conditioned on sec-

tion 51A–4.501(f)(2)'s filing requirement being met.

■ We further note that, in the years since the ordinances were passed, the Texas Legislature has enacted several validating statutes including section 51.003 of the Texas Local Government Code. Section 51.003 states that a governmental act of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statutes and ordinances if it is more than three years since the effective date of the governmental act and no lawsuit to annul or invalidate the act was filed before that third anniversary.[4] *See* Tex. Loc. Gov't Code Ann. § 51.003 (West 2008). Validation acts are to be liberally construed and may cure defects that do not render the ordinance unconstitutional. *See Murmur Corp. v. Bd. of Adjustment of City of Dallas,* 718 S.W.2d 790, 793 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). To the extent the City's failure to file the ordinance constitutes a procedural defect, TCI does not contend that the defect rises to the level of rendering the ordinances unconstitutional. Accordingly, TCI has failed to show that the ordinances are invalid based on a failure to meet section 51A–4.501(f)(2)'s filing requirement. We resolve this issue against TCI.

### III. Construction of the Ordinances

■ In its next issue, TCI contends the trial court erred when it instructed the jury in Question No. 11 that ordinance 21391, as amended by ordinance 22158, provides that a person may not demolish a structure within the West End Historic District without first obtaining approval of the landmark commission. According to

TCI, the ordinances do not require landmark commission approval for demolition unless the building sought to be demolished is a "contributing structure."[5] Because there was no determination that the building at issue was a contributing structure, TCI contends it did not need landmark commission approval for demolition. TCI's construction of the ordinances is incorrect. Whether a building is a "contributing structure" determines which of two application processes the property owner must follow. Under either application process, however, the property owner must obtain the approval of the landmark commission before demolishing a building in the West End Historic District.

Section 7.1 of ordinance 22158 states that an owner seeking demolition of a structure in the West End Historic District must submit an application to the building official who must forward the application to the director. The director must then determine within ten days whether the structure proposed for demolition is a "contributing structure." If the director determines the structure is a contributing structure, the application process proceeds pursuant to the procedure and standards set out in section 7.1. If the director does not determine that the building sought to be demolished is a contributing structure, the application "is governed by the procedure and standards contained in Section 51A–4.501(c) of the Dallas Development Code, as amended." The procedures and standards contained in 51A–4.501(c), as amended, were thereby adopted by reference into section 7.1.

It is undisputed that TCI submitted a demolition application to the building official. It appears, however, that the applica-

---

4. Section 51.003 includes several exceptions, none of which is applicable here.

5. "Contributing structure" is defined as "a structure that retains its essential architectural integrity of design and whose architectural style is typical or integral to this district."

tion was never forwarded to the director. Accordingly, there was no determination by the director within ten days that the structure at issue was a contributing structure. Under the terms of the ordinance, therefore, TCI was required to proceed with the application process under the standards contained in the development code.

At the time ordinance 22158 was passed, the regulations for demolition and removal applications were set forth in section 51A–4.501(c) of the development code. On January 12, 2000, approximately five and a half years after ordinance 22158 was passed, the City passed ordinance 24163 which significantly amended and restructured 51A–4,501. This restructuring resulted in the demolition application regulations being moved from subsection (c) to subsection (h). At the same time, a new subsection (c) was adopted regulating the historic district designation procedure and pre-designation moratoriums. *See* DALLAS DEV. CODE § 51A–4.501(c).

The City did not amend section 7.1 of ordinance 22158 to reflect the movement of the demolition and removal application process from subsection (c) to subsection (h). TCI argues that, because section 7.1 has not been amended to reflect this change, the plain language of section 7.1 means its demolition application is governed by the current subsection (c). Because the current subsection (c) is unrelated to demolition applications, there is obviously nothing in the subsection that requires landmark commission approval prior to demolition. TCI contends, therefore, the trial court erred in instructing the jury in Question 11 that landmark commission approval was required for demolition.

 The general rule is that when a statute is adopted by reference, the adoption takes the statute as it exists at that time, and the subsequent amendment of the statute is not incorporated into the terms of the adopting act. *See Trimmier v. Carlton,* 116 Tex. 572, 296 S.W. 1070, 1074 (1927). When the language of the adopting act evidences an intention to give effect to later amendments, however, the courts will give effect to that intention and the amendments will be held to be within the adopting act and to govern the subject matter thereof. *Id.* "We ought not to give any legislative act a construction that will throw the law into some degree of confusion if it can be ascertained that the legislature had fairly expressed any other purpose." *Id.*

In this case, section 7.1 of ordinance 22158 referenced and adopted the provisions of 51A–4.501(c), *as amended.* The phrase "as amended" has been found to incorporate future amendments to statutes adopted by reference. *Id.* Although the phrase has also been held to refer solely to past amendments, courts have done so where it appeared clear from the context that the phrase was specifically referencing past amendments or the incorporation of future amendments would render the statute unenforceable. *See St. Paul Mercury Ins. Co. v. Billiot,* 342 S.W.2d 161, 163–64 (Tex.App.—Beaumont 1960, writ ref'd) ("as amended" held to refer to past amendments where previous statute specifically referenced past amendments to be incorporated); *Ex parte Elliott,* 973 S.W.2d 737, 742 (Tex.App.—Austin 1998, pet. ref'd) ("as amended" held to refer to past amendments where incorporation of future amendments would render statute unconstitutional).

 The construction urged by TCI, that section 7.1 must be read to incorporate the current subsection (c) would lead to the absurd result of demolition applications being governed by a section that is completely unrelated to demolition applica-

tions. We cannot apply a rule of construction that leads to an absurdity or thwarts the plain, legislative purpose of the ordinance. *See Trimmier,* 296 S.W. at 1074. Section 7.1 must be read, therefore, to incorporate either section 51A–4.501(c) as it existed at the time the ordinance was passed, or to incorporate the later amendments including moving the requirements for demolition applications to subsection (h).

We conclude that the phrase "as amended" in section 7.1 was intended to incorporate future amendments to the demolition and removal approval process. There is nothing in section 7.1 to indicate any intent to limit the amendments to be incorporated. To the contrary, the clear intent was that ordinance 22158 was to work in conjunction with the city development code. To hold that future amendments to the development code were not incorporated into section 7.1 would lead to unnecessary confusion in the application process and make it even more difficult for those seeking demolition or removal permits to determine what is required of them. *See Road Dist. No. 1, Jefferson Cty. v. Sellers,* 142 Tex. 528, 180 S.W.2d 138, 141 (1944) (where one law is incorporated into another there should be as little confusion as possible so public can ascertain law's requirements).

The current demolition and removal permit requirements found in section 51A–4.501(h) and incorporated into section 7.1 of ordinance 22158 include the requirement that "[a] property owner seeking demolition or removal of a structure ... in a historic overlay district must submit a complete application for a certificate of demolition or removal to the landmark commission." *See* DALLAS DEV.CODE § 51 A–4.501(h). Accordingly, the trial court did not err in instructing the jury in Question 11 that ordinance 21391, as amended by ordinance 22158, provides that a person may not demolish a structure within the West End Historic District without the approval of the landmark commission.[6] We resolve this issue against TCI.

Related to and dependent upon TCI's argument regarding the wording of Question 11, TCI argues it did not violate the ordinances because it fulfilled its obligations by submitting an application to the building official. This argument hinges on TCI's construction of the ordinances to not require the submission of an application to the landmark commission unless the director determines that the building for which the demolition permit is sought is a contributing structure. As discussed above, TCI's construction of the ordinances is incorrect. Under section 7.1 of ordinance 22158, when a building is not determined to be a contributing structure,

6. We further note that landmark commission approval is required by section 4 of ordinance 21391. Section 4 states that "a person shall not alter the Property [in the West End Historic District], or ... *remove any structure* on the Property without first obtaining a certificate of appropriateness in accordance with the Dallas Development Code." The Dallas Development Code states that an application for a certificate of appropriateness must be submitted to the director of the department of planning and development or that person's representative and, except for applications for routine maintenance work, the director must immediately forward the application to the landmark commission. *See* DALLAS DEV.CODE § 51A–4.501(g). The landmark commission must hold a public hearing and either approve the application, deny it with prejudice, or deny it without prejudice. *Id.* Accordingly, section 4 of ordinance 21391 requires landmark commission approval before removing any structure on property in the West End Historic District regardless of whether it is designated as a contributing structure. It is undisputed that TCI did not submit an application for a certificate of approval.

the property owner must submit an application for demolition to the landmark commission pursuant to the procedure and standards set forth in the development code. It is undisputed that this was not done. Accordingly, the correct interpretation of the ordinances supports the trial court's charge and the jury's finding of a violation.[7]

## IV. Application of Section 54.017 Civil Penalty Provision

■ Having concluded that the jury properly found that TCI violated the ordinances, we must now examine once again whether the City was entitled to recover a civil penalty for the violation under section 54.017 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 54.017 (West 2008). The jury in this case was instructed that the City could recover a civil penalty if it proved (1) TCI was actually notified of the ordinance and (2) after TCI received notice of its ordinance violation, it committed acts in violation of the ordinance or failed to take action necessary for compliance with the ordinance.[8] In our previous opinion we concluded that the section 54.017 civil penalty provision, which is located in the "Municipal Health and Safety Ordinances" section of the local government code, was not applicable to general zoning ordinances unrelated to health or safety such as the ones at issue here. *See TCI West End I*, 407 S.W.3d at 301. The supreme court disagreed concluding there was no "decisive weight" to the title of the subchapter. *See*

*TCI West End II*, 463 S.W.3d at 57. The supreme court also concluded that, although the City was authorized under a different statute to create civil penalties for violations of general zoning ordinances but had not done so, the application of the civil penalty provision for health and safety ordinances to a general zoning ordinance violation was neither redundant nor a "fatal conflict." *Id.* at 57–58.

We also concluded in our previous opinion that even if the penalty provision applied, there was no evidence that TCI was notified of the ordinances before it demolished the building. *See TCI West End I*, 407 S.W.3d at 301. The supreme court concluded that this holding did not resolve the issue because section 54.017 allows the recovery of a civil penalty if a defendant fails to take action to come into compliance with an ordinance after being notified of its provisions. *See City of Dallas*, 463 S.W.3d at 58. Accordingly, the court remanded the case to us to consider whether TCI "could have taken action to comply with the ordinance" after it had demolished the building and it received actual notice of the ordinances' provisions and its violation of them. *Id.* at 59.

TCI argues that post-violation compliance in this case was not possible. TCI contends there is no way to obtain pre-demolition approval from the landmark commission after demolition has occurred, there is no process by which to obtain after-the-fact demolition approval, and whether or not approval is given is entirely

---

7. TCI also notes that it was granted a demolition permit by the building official and, although the permit was revoked, TCI was not given the required statutory notice of the revocation. The City argues TCI knew the permit had been revoked before it demolished the building. While the fact that TCI was originally granted a demolition permit may go to whether it was given notice of the ordi-

nances' requirements regarding landmark commission approval prior to demolition (which we have already concluded it was not), it does not change the fact that TCI demolished the building without landmark commission approval in violation of the ordinances.

8. *See* note 3.

out of TCI's control. The argument is, essentially, that nothing TCI could do post-violation would fulfill the purpose of the ordinances at issue, making application of the penalty provision both futile and nonsensical.

The City's only burden under the instruction given in this case was to show that, after TCI was notified of its violation, TCI either committed acts in violation of the ordinances or took no action to comply with the ordinances. At trial, an inspector with the code compliance division of the City Attorney's office testified that TCI was in violation of the ordinances for over 1,500 days by failing to seek approval from the landmark commission from the date demolition began until trial. This time period necessarily includes all the days TCI took no action after it was notified that the demolition it had already completed was in violation of the ordinances. It was TCI's burden in response to show that taking action to comply with the ordinances was not possible post-demolition.

■ Impossibility is a plea in avoidance on which the party making the plea bears the burden of pleading and proof. *See Boyd v. Kallam*, 152 S.W.3d 670, 676 (Tex.App.—Fort Worth 2004, pet. denied) (plea which confesses the truth of the facts alleged but seeks to deprive facts admitted of their ordinary legal effect or obviate, neutralize, or avoid them, is a plea in avoidance on which party seeking to benefit bears the burden of proof); *cf. Hewitt v. Biscaro*, 353 S.W.3d 304, 308–09 (Tex. App.—Dallas 2011, no pet.) (impracticability or impossibility of performance of contract are affirmative defenses). TCI neither pleaded, argued, nor proved that it was impossible for it to take action to obtain demolition approval from the landmark commission after it was notified that its failure to obtain such approval was an ordinance violation and it did not request a

jury instruction regarding any excuse for non-performance. TCI's failure to plead or prove at trial that taking action to comply was impossible means the penalty award cannot be reversed on the basis of impossibility.

TCI again contends it took all action necessary for compliance by submitting an application to the building official and that it was incumbent upon the City to ensure that the application was forwarded to the landmark commission. As with TCI's earlier arguments that it complied with the ordinances, this one hinges on its erroneous construction of the ordinances' requirements. Section 51A–4.501(h) of the development code, which is incorporated into section 7.1 of ordinance 22158, requires a property owner to apply directly to the landmark commission for approval to demolish a non-contributing structure in a historic overlay district. The building official is not required to forward a demolition application for a non-contributing structure to the landmark commission and, in fact, the application that must be submitted to the landmark commission has requirements separate from those required for applications to the building official. *See* DALLAS DEV. CODE § 51A–4.501(h). Accordingly, TCI's submission of an application to the building official did not fulfill its obligation to take action to comply with the ordinances' requirement that it submit an application to the landmark commission.

■ Finally, TCI argues that imposing civil penalties would violate its due process rights because it had no notice of any procedures by which to obtain retroactive approval and no control over whether such approval was given. TCI did not present a due process challenge to the civil penalty provision in the trial court and, therefore, this challenge was not preserved for appel-

late review. *See In re L.M.I.*, 119 S.W.3d 707, 711 (Tex.2003).

Because (1) the supreme court has held the section 54.017 civil penalty provision applies to the ordinances at issue; (2) it is undisputed that TCI never submitted an application for landmark commission approval for demolition, and (3) TCI failed to plead, argue, or prove in the trial court the impossibility of taking action to obtain landmark commission approval after it learned it was required to do so, we must conclude the City showed it was entitled to an award of civil penalties.

■ We now address the amount of civil penalties to which the City was entitled. TCI argues that the maximum amount of civil penalties that may be imposed on it is $2,000. The civil penalty provision states that, except with respect to violations not at issue here, the maximum penalty that may be imposed is $1,000 per day for a violation. TEX. LOC. GOV'T CODE ANN. § 54.017. TCI contends that its violation, if any, was the demolition of the building which took place over two days, thereby making the maximum penalty $2,000. The $750,000 penalty in the trial court's judgment, however, does not hold TCI liable for the demolition itself, but for TCI's post-demolition failure to take action to comply with the ordinance. This is an ongoing violation until TCI takes the required action.[9]

TCI argues that making the failure to obtain a landmark commission approval a continuing violation puts the amount of civil penalties that may be imposed on it entirely within the control of the City because whether, and when, demolition approval is granted is entirely within the City's discretion. We disagree. Section 54.017 requires only that the property owner "take action necessary for compliance." According to the City, TCI was required to seek demolition approval from the landmark commission by submitting a proper application. From there, the burden of action would shift to the City. Because TCI never submitted an application to the landmark commission, the possible daily penalty continued to accrue.

TCI also argues that the trial court's instruction in the jury charge stating "[y]ou are hereby instructed that the MKT Freight Station was a historic structure" was erroneous and could have inflated the amount of civil penalties awarded to the City. The instruction given by the trial court was relevant to the Texas Historical Commission's claim for damages against TCI brought under section 315.006 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 315.006 (liability for adversely affecting historic structure or property). The instruction had no bearing, however, on the City's claim for civil penalties under section 54.017.[10] The ordinances at issue pertain to any structure in a historic overlay district regardless of whether the structure itself is "historic."

TCI states that "[i]f any juror was passionate about historic preservation, the tri-

**9.** TCI relies on *United States v. Luminant Generation Co., L.L.C.*, No. 3:13–CV–3236–K, 2015 WL 5009378 (N.D.Tex. Aug. 21, 2015) for the proposition that failure to obtain the proper permit does not create an ongoing violation. Because a party can be held liable for civil penalties under section 54.017 not just for violating an ordinance, but for failure to take action to comply with an ordinance after committing a violation, the analysis in *Luminant* is inapplicable.

**10.** TCI suggests that, if the instruction was not necessary to the City's claim for civil penalties, then the trial court abused its discretion by giving a superfluous instruction. Because the instruction was relevant to the claims made by the Texas Historical Commission, TCI's argument is not well taken.

al court's instruction would have greatly inflated the amount of civil penalties awarded." This argument is entirely speculative. There is nothing in the record to suggest that the jury's award was influenced by the trial court's instruction or that any juror had a personal bias that affected the outcome of the case. *See Zieger v. Tex. Dept. of Family & Protective Servs.*, No. 03–03–00690–CV, 2005 WL 2043812, at \*8 (Tex.App.—Austin Aug. 25, 2005, pet. denied) (mem.op.) (argument that juror might have made prejudicial remarks in jury deliberation is speculative and cannot form basis for grant of new trial). Indeed, the jury awarded far less than the maximum amount of penalties available. Section 54.017 permits an award of up to $1,000 per day. *See* Tex. Loc. Gov't Code Ann. § 54.017. TCI does not dispute that the City's original petition gave it sufficient actual notice to trigger section 54.017 penalties.[11] The record in this case shows that the number of days from the date the petition was filed to the date argued by the City as the end point of TCI's failure to comply exceeded 1,500 days. Accordingly, the jury could have awarded over $1 million in penalties, but chose to award $750,000. Because the failure to take necessary action is a continuing violation and the record supports the amount of penalties awarded by the jury, we resolve this issue against TCI.

## V. Conclusion

Based on the foregoing, we affirm the trial court's award of $750,000 in civil penalties to the City.

---

11. There was evidence at trial that the City transmitted the ordinances to TCI's counsel three days before filing the original petition. TCI filed its original answer twenty days after the petition was filed. The differences between these dates are not material for the purpose of disposing of TCI's argument.