# NO. 12-17-00049-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RANDALL ONEAL MATHIS, APPELLANT* | § | *APPEAL FROM THE 115TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *FREDERICKA ANTOINETTE MATHIS, APPELLEE* | § | *UPSHUR COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Randall Oneal Mathis appeals the trial court's divorce decree. In two issues, Randall contends that the trial court abused its discretion by disproportionately awarding a greater portion of the community property estate to Fredericka Antoinette Mathis and awarding her spousal maintenance. We modify the trial court's judgment to delete the award of spousal maintenance and affirm as modified.

## BACKGROUND

Randall and Fredericka were married on July 17, 1999. Fredericka filed for divorce on November 17, 2014. The couple had two children, ages eighteen and thirteen at the time of the final hearing for divorce. Randall, who worked seventeen years for McDonald's, developed a substance abuse problem leading him to criminal activity for which he was first incarcerated in January 2008. Randall was incarcerated for six of the last eight years the couple was married. Most recently, Randall was convicted on November 17, 2014 of a second degree felony, enhanced to a first degree felony for possession of a controlled substance with intent to deliver. For this offense, he was sentenced to seventeen years in the Texas Department of Criminal Justice—Institutional Division.

Between periods of incarceration, Randall was involved in an incident from which he sustained personal injuries and ultimately received a $900,000 settlement. From the settlement, he received a net payment of $449,147.65 following payment of his attorney's fees, expenses, and medical bills. At the time of the final divorce hearing, he retained $300,444.13 which was being held in his personal injury attorney's IOLTA trust account. Between the date of the settlement and final hearing, approximately $70,000 of Randall's settlement money was used to pay household expenses and community debts including the mortgage for the family's residence and to acquire a vehicle which was awarded to Fredericka.

At trial, Fredericka sought a disproportionate division of the marital community estate and spousal maintenance from Randall. In support, Fredericka testified that she had been employed the previous eight years at the United States Post Office in Cookville as a nontraditional full-time clerk, driving forty-eight minutes one way to reach the post office. She stated that she obtained this job near the time Randall was first incarcerated. She further testified, based on a budget admitted into evidence, that her total monthly expenses were $4,682.73. Evidence showed that her net take home pay per month from her job is $2,006.46, leaving a monthly budget deficit of $2,676.27.

Although bank documentation shows the parties' marital residence was valued at $96,500, Fredericka testified that it is "way less in value." She added that the house needed a new roof and had significant plumbing problems which she estimated would require between ten and fifteen thousand dollars to repair.

In the divorce decree, the trial court awarded the family residence to Fredericka. The court ordered her to assume the indebtedness on that property, approximately $54,000 at the time of trial. The court also awarded Fredericka the property in her possession, two vehicles, and her retirement account, with a net value of approximately $1,000. Randall received the property in his possession as well as all of his personal clothing and equipment located at the residence, which Fredericka was to deliver to him upon his release from prison. Additionally, a house and real property located at 924 Warren Street in Gilmer was confirmed as Randall's separate property and awarded to him. Both parties were awarded all sums of cash in their respective possession or under their sole control as their sole and separate property.

The trial court ordered Randall to pay child support of $224.22 per month until the thirteen year old child of the marriage reaches the age of eighteen. Further, the trial court

2

ordered Randall to pay Fredericka spousal maintenance of $1,200 per month for three years. Randall timely appealed.

**DIVISION OF COMMUNITY PROPERTY**

In his second issue, Randall contends that the trial court abused its discretion by awarding a grossly disproportionate share of the couple's community property to Fredericka without any reasonable basis. He asserts that it is manifestly unjust that Fredericka received almost all of the community assets because Fredericka has greater earning power than he does and the division of property provides a windfall to Fredericka.

## Standard of Review

We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex 1981). It is this court's duty to consider every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003); *Loaiza*, 130 S.W.3d at 899.

Where findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam). In determining whether some evidence supports the judgment and the implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

## Applicable Law

The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown. *Murff*, 615 S.W.2d at 698. The trial court is charged with dividing the estate of the parties in a "just and right" manner, considering the rights of both parties. TEX. FAM. CODE ANN. § 7.001(West 2006). The community property of the marital estate need not be equally divided. *Murff*, 615 S.W.2d at

699. The trial court may order an unequal division of the community property when a reasonable basis exists for granting that relief. *Hailey v. Hailey*, 176 S.W.3d 374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The trial court may consider such factors as the spouse's capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699.

In deciding whether an unequal distribution is appropriate, a trial court can consider a spouse's fault in causing the divorce. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). But while fault may be considered in the property division, "[t]his does not mean that fault must be considered in all cases where a divorce is granted on fault grounds." *Id.* A trial court is prohibited from using a spouse's fault and the property division to punish the errant spouse for his misdeeds. *Id.*

## Analysis

Randall contends that there is no reasonable basis for a disproportionate division of the parties' community estate. He points out that while fault in the marriage was pled as the basis for an unequal division of the community estate, the decree specifies the divorce was dissolved on the no fault basis of unsupportability. The parties' estate is uncomplicated and the court's division of the property is straightforward. Their main community asset is the marital residence and real property at 1072 Highway 155 North in Gilmer. The record shows that the appraisal district values the property at $136,340.00. Approximately $54,000 was owed on the mortgage at the time of trial. Based on the appraisal district valuation, there is about $82,000.00 in equity in the home. However, other evidence before the trial court conflicts with that valuation. The mortgagor bank assigned a value of $96,500 in 2003. Though disputed by Randall, Fredericka testified that the property value is currently well below $96,500. She testified that the home needs a new roof and that it would take between ten and fifteen thousand dollars to repair the plumbing issues. Because there were no findings of fact or conclusions of law filed, we imply all necessary findings to support the trial court's order. *See Worford*, 801 S.W.2d at 109. We disregard evidence that contradicts the order. *Id*. Thus, we can imply that the trial court determined there was much less equity in the residence and real property at 1072 Highway 155 North than Randall contends.

Further, the trial court could consider other factors, such as the size of the separate estate of the parties in dividing the community estate. *Murff*, 615 S.W.2d at 699. The evidence indicates that Randall owns separate property, including a house on Warren Street in Gilmer and the net proceeds from his personal injury settlement. Prior to Randall's most recent conviction and incarceration, he filed a lawsuit seeking recovery of damages for the injuries he received in the aforementioned incident. Fredericka was not a party to Randall's lawsuit or otherwise sought an individual recovery related to the incident in which Randall was injured. The separate property characterization of the settlement funds held in Randall's attorney's IOLTA account was not in dispute.

Fredericka's separate property estate consisted of approximately $1,000.00 in connection to her retirement account with the postal service. This evidence related to the size of the respective separate estates supports the unequal division of the parties' community property. *See id*. We conclude that the evidence showing that Randall's separate property estate was more valuable than Fredericka's separate property estate supports the trial court's division of community property. Accordingly, the trial court did not abuse its discretion in ordering an unequal division of property. *See id.* at 698-99. Further, we cannot say that awarding Fredericka the vast majority of the community estate was intended to punish Randall for any fault in the break-up of the marriage. We overrule Randall's second issue.

## SPOUSAL MAINTENANCE

In his first issue, Randall contends that the trial court abused its discretion by ordering him to pay spousal maintenance to Fredericka. In addition to arguing that Fredericka is not eligible for the award, Randall complains that he has no income to pay the award. Therefore, he contends that the court improperly considered his personal injury settlement proceeds as a source of income for payment of spousal maintenance.

### Standard of Review

We review an award of spousal maintenance under an abuse of discretion standard. *Stucki v. Stucki*, 222 S.W.3d 116, 119 (Tex. App.—Tyler 2006, no pet.); *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Dunn*, 177 S.W.3d at 396. Under the abuse of discretion standard,

5

legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Id.* Because of the overlap between the abuse-of-discretion and sufficiency-of-the-evidence standards of review, a reviewing court engages in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion. *Day v. Day*, 452 S.W.3d 430, 433 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

The applicable sufficiency review comes into play with regard to the first question. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.−Dallas 2005, pet. denied). To prevail on a legal-sufficiency challenge on an issue for which the opposing party had the burden of proof, the complaining party must show that there is no evidence that would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 376 (Tex. App.−Houston [1st Dist.] 2010, pet. denied) (op. on reh'g). Based on the elicited evidence, we determine whether the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *See Granger v. Granger*, 236 S.W.3d 852, 855-56 (Tex. App.—Tyler 2007, pet. denied).

**Applicable Law**

Pursuant to the family code, the trial court in a divorce proceeding is authorized to order one spouse to pay "maintenance" to the other spouse. *See* TEX. FAM. CODE ANN. §§ 8.001-8.061 (West 2006 & Supp. 2017). "Maintenance" means an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse. TEX. FAM. CODE ANN. § 8.001(1). Spousal maintenance is not property. *O'Carolan v. Hooper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). The legislative purpose in enacting provisions for spousal maintenance was to provide temporary and rehabilitative support for a spouse whose ability for self-support is lacking or has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *Id.*

A court may not order maintenance that requires an obligor to pay monthly more than the lesser of (1) $5,000 or (2) twenty percent of the spouse's average monthly gross income. TEX. FAM. CODE ANN. § 8.055(a). For purposes of Chapter 8, gross income includes "wage and salary

6

income and other compensation for personal services" and other specified types of "income." *Id*. § 8.055(a-1). The statute also identifies certain items not included in gross income, such as return of principal or capital, accounts receivable, and benefits provided by certain government programs. *Id*.

**Analysis**

The family code specifies the monetary limits and the acceptable origin of payments required by an order for maintenance. Therefore, to justify the trial court's monthly maintenance award of $1,200, there had to be some evidence in the record that Randall's post-decree average monthly gross income, from those specified, legislatively sanctioned sources, was $6,000. *See id*. § 8.055. However, Randall was incarcerated at the time Fredericka filed this divorce action and remained incarcerated at the time of the final hearing. Fredericka conceded that Randall could not work and therefore, could not generate income while incarcerated. This is not a situation where a spouse is capable of working but chooses not to work or earn income consistent with his income earning potential. While incarcerated, Randall will not have the ability to earn any income. Incumbent in a spousal maintenance award is the obligor spouse's ability to earn income to satisfy the maintenance obligation. *See id*.; *Income,* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining income as "[t]he money or other form of payment that one receives, usually periodically from employment, business, investments, royalties, gifts, and the like").

Not only is Randall unable to earn income while incarcerated, the record does not reflect when Randall may be released on parole. In an effort to obtain a continuance, representations were made to the trial court prior to the final hearing indicating that Randall may soon be paroled. It should be noted that Randall testified during the motion for new trial hearing months later, explaining that he had been turned down for parole and would not be eligible for reconsideration for parole until September 2017. Whether Randall has been released on parole or is still incarcerated as of the date of our disposition of this case is not controlling. While it is unlikely that Randall will serve the entire seventeen year sentence from his current conviction, the exact date of his release is unknown and as long as he is incarcerated, Randall does not have an identified source of income upon which the award of spousal maintenance could have been based.

Lastly, there is no evidence as to Randall's wage earning ability after he is released from prison. There was no evidence presented as to Randall's income either while employed by

McDonald's or at any time before his injuries. At fifty years of age with multiple felony convictions, his employment options will be limited. The size of his personal injury settlement indicates Randall sustained more than minor physical injuries which will further compromise his ability to obtain and maintain employment upon his release from prison. Fredericka testified that she assumed Randall had recovered from his injuries and that she thought he could work. She stated that he had not sustained a brain injury and that most of his injuries were related to his back. This subjective opinion provides no real guidance as to the type of work Randall will be able to perform when released from prison or his income earning potential. The trial court commented during the motion for new trial hearing that Randall's child support obligation was based on a minimum wage calculation. This implies his post-incarceration income earning ability is limited and inconsistent with a finding of potential income necessary to support a $1,200 monthly spousal maintenance award.

Accordingly, Randall lacks "income" from any source identified in Section 8.055(a-1). He does, however, have a large sum of money at his disposal. By awarding Randall all sums of cash in his possession or subject to his sole control, the trial court awarded to him the proceeds from his personal injury settlement. There is nothing in the record reflecting that the money awarded to Randall was anything other than the remaining proceeds of his personal injury settlement. In the absence of "income" from the enumerated sources, Randall would be required to pay spousal maintenance to Fredericka with money from his personal injury settlement. Therefore, to justify the trial court's spousal maintenance award, we would have to interpret Section 8.055(a-1) as allowing the characterization of the money awarded to Randall in the divorce decree to transform from property to income merely by his continued possession of the money after entry of the decree. As explained below, we determine that such an interpretation is inconsistent with the legislature's intended application of Chapter 8.

Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). In doing so, we must begin with the plain meaning of the statute's words, reading the statute as a whole. *Id*. We do not view individual provisions in isolation. *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 55 (Tex. 2015) (per curiam). We presume the legislature selected the statute's language with care, choosing each word for a purpose and purposefully omitting words not chosen. *Id*. If the language is unambiguous, we must interpret it according

8

to its terms, giving meaning to the language consistent with other provisions of the statute. ***Tex. Dep't of Transp.***, 146 S.W.3d at 642. We must avoid adopting an interpretation that renders any part of the statute meaningless or superfluous. ***City of Dallas***, 463 S.W.3d at 57. If provisions of a single statute appear to conflict, we try to harmonize them to effectuate both by assigning each a meaning that will permit both to stand. ***In re Morris***, 498 S.W.3d 624, 630 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding). We further consider the objective the law seeks to obtain and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1), (5) (West 2013); ***Tex. Dep't of Transp.***, 146 S.W.3d at 642.

It is established that the trial court may order a spouse to pay a portion of his average monthly gross income as maintenance. TEX. FAM. CODE ANN. § 8.055(a). The family code specifically provides that "maintenance" represents periodic payments from *future* income. ***Id***. § 8.001(1). Use of the word "future" implies that the income has yet to be earned or realized. *See, e.g*., *Future*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2011) (defining future as what will exist or occur at a later time). The purpose of spousal maintenance is to provide rehabilitative support on a temporary basis to allow a spouse to become self-supporting after the divorce. *See **O'Carolan***, 71 S.W.3d at 533. Whether the future income is derived from wages, self-employment, rental properties, employment benefits, retirement, pension, investment gains, gifts or prizes, the operative component of each of the enumerated inclusions under Section 8.055(a-1) is that the proceeds used for spousal maintenance are expected to be realized after the divorce is final. Reading the provisions of Chapter 8 together and giving the words their plain meaning, it is apparent that the legislature intended an award of spousal maintenance to be based on monies a paying spouse earns or receives after the divorce is final. In short, new money not existing money. *See **Tex. Dep't of Transp.***, 146 S.W.3d at 642.

Had the legislature intended that gross income include money in possession regardless of the source, the legislature could have specifically listed money in possession in the list of inclusions under Section 8.055(a-1). It did not do so and, in another section, specifically defined maintenance as periodic payments from a spouse's future income. TEX. FAM. CODE ANN. § 8.001(1); ***City of Dallas***, 463 S.W.3d at 55. Further, Section 8.055(a-1)(2) specifically excludes return of principal or capital as gross income. TEX. FAM. CODE ANN. § 8.055(a-1)(2). This exclusion is consistent with a statutory interpretation that spousal maintenance is to be based only on wages a paying spouse will make, or income that property awarded to the paying

9

spouse may generate, after entry of the divorce decree. It is not consistent with an interpretation that maintenance can be based on the continued possession by the paying spouse of the property awarded in the decree. *See Tex. Dep't of Transp.*, 146 S.W.3d at 642.

The money Randall was awarded in the divorce decree which included his remaining personal injury settlement proceeds, could not by definition be "future" income. While a very valuable and liquid asset, it is also a diminishing one. At the time of the final hearing, those proceeds amounted to $300,444.13. During the hearing on the motion for new trial, the remaining proceeds had been reduced to $245,274. While Randall has funds available to pay the maintenance ordered, the mere possession of money to satisfy the obligation alone cannot support an award of maintenance. There must be evidence of future income from which the maintenance is to be paid, which is absent in this case.[1] TEX. FAM. CODE ANN. § 8.001(1).

Further, a spouse ordered to pay spousal maintenance can seek a reduction in the amount of maintenance upon filing a motion in the court that originally rendered the order and upon the proper showing of a material and substantial change in circumstances. *See id*. § 8.057. By interpreting gross income to include money in possession awarded to Randall in this case, Randall will have no effective means to seek a reduction in the amount of maintenance payments until he no longer possesses any of the personal injury settlement proceeds awarded to him. When reviewing Chapter 8 as a whole, the plain language of the statutory text reflects a legislative intent that spousal maintenance be an award from future income of a spouse subject to termination or modification depending on future events on a proper showing of material and substantial change. *Id*. The inclusion of the personal injury settlement proceeds as gross income upon which an award of spousal maintenance can be based improperly assigns a meaning to Section 8.055(a) that would be inconsistent with Section 8.057 even if one provision, standing alone, might be susceptible to such a construction. *See In re Morris*, 498 S.W.3d at 630.

---

[1] We note that "gross income" includes interest income. *See* TEX. FAM. CODE ANN. § 8.055(a-1)(1)(B). However, Randall cannot earn interest on the money awarded to him. Randall's settlement proceeds were being held in an account pursuant to the requirements of the Texas Equal Access to Justice Program. *See* TEX. STATE BAR R. art. XI, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013). Interest earned through an attorney's Interest on Lawyer Trust Account (IOLTA) account is transferred to the Texas Equal Access to Justice Foundation, a non-profit corporation, which is charged with administering these funds through grants to non-profit organizations that have a primary purpose of delivering legal services to low income persons. *Id*. art. XI, § 4. Randall's attorney's participation in the IOLTA program was mandatory. *Id*. art. XI, § 5. Therefore, Randall does not receive the interest earned on the settlement proceeds held in the IOLTA account.

This case presents a unique set of facts. While unfortunately the destruction of marriages from substance abuse is all too common, rarely will a situation arise where a spouse is injured between incarcerations, files a lawsuit, and after becoming incarcerated again, receives a substantial settlement which is largely intact at the time of the final divorce hearing. Though Randall is the recipient of a significant sum of money from his lawsuit which was awarded to him in the divorce, there is no evidence in the record of his future employability and wage earning ability after his release at some unknown future date.

Allowing an award for spousal maintenance based on Randall's personal injury settlement is inconsistent with the legislative intent that spousal maintenance be an award from future income of a spouse, subject to conditions which provide for modification. *See* TEX. FAM. CODE ANN. § 8.057. The evidence reflects that Randall will not earn income while incarcerated, does not reflect when he may be released from prison, and is void of any evidence as to his income earning potential after his release from prison. Because there is no evidence of Randall's future income to support the award, the trial court abused its discretion in awarding spousal maintenance to Fredericka. *See **Dunn***, 177 S.W.3d at 396. We sustain Randall's first issue.

## DISPOSITION

Having overruled Randall's second issue as to the marital property division and sustained his first issue as to the award of spousal maintenance, we ***modify*** the final divorce decree to delete the award of spousal maintenance and ***affirm*** the divorce decree as modified.

**GREG NEELEY**
Justice

Opinion issued March 15, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 15, 2018**

**NO. 12-17-00049-CV**

**RANDALL ONEAL MATHIS,**
Appellant
V.
**FREDERICKA ANTOINETTE MATHIS,**
Appellee

Appeal from the 115th District Court
of Upshur County, Texas (Tr.Ct.No. 372-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the court below. In accordance with this Court's opinion of this date, the judgment of the trial court is **modified** as follows:

We **DELETE** that portion of the trial court's judgment awarding Fredericka Antoinette Mathis spousal maintenance in the sum of $1,200 per month.

We **DELETE** that portion of the trial court's judgment ordering any employer of Randall Oneal Mathis to withhold from Randall Oneal Mathis's disposable earnings for spousal maintenance for Fredericka Antoinette Mathis.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below is **AFFIRMED** as modified. It is further ORDERED that all costs of this

appeal are hereby adjudged against the party incurring same, for which execution may issue, and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*